## JACK (GIROLAMO) PAGANO
vs.
## BOARD OF EXAMINERS OF BARBERS, ET AL.

Superior Court  Hartford County  File #57644

MEMORANDUM FILED APRIL 11, 1938.

Abraham A. M. Schweitzer, of Hartford, for the Plaintiff.

Charles J. McLaughlin, Attorney General; Frank A. DiSesa, Assistant Attorney General, for the Defendants.

DICKENSON, J. Section 1206c of the Cumulative Sup-

plement to the General Statutes (1935), provides that the defendants, the Board of Examiners of Barbers, "may make all needful regulations based upon and making effective the recommendations of a Temporary State commission" appointed to study conditions pertaining to barbers. Acting upon such a recommendation the defendants passed a rule (Rule 3B) prohibiting "advertising by the display of price lists for barbering services in any part of the barber shop premises where such signs may be seen or read from the outside." The plaintiff displayed a sign in his window that was visible from the public sidewalk advertising haircuts for twenty-five cents. He was arrested, convicted and fined for this in the local police court. He has brought this action claiming the rule is illegal on various grounds and asking a declaratory judgment to that effect and an injunction enjoining the defendants from attempting to enforce it and from revoking or suspending his license.

The defendants in their answer deny the rule is illegal, and that the plaintiff will suffer irreparable injury.

While both parties have prepared exhaustive briefs the issue is quite simple. It is—may the defendant by rule prohibit advertising in shop windows.

As to the plaintiff's claim for injunctive relief, the defendant Board, as it points out in its brief, has no authority to suspend or revoke the plaintiff's certificate for violation of the rule in question and its necessary supervision of all barbers renders it unwise to grant the plaintiff's broad prayer that the defendants be enjoined "from interfering in any way with said plaintiff in the conduct of his business."

The prayer for injunctive relief is denied and it remains to consider the claim for a declaratory judgment that the rule is illegal or void, for by statute any barber failing to comply with any regulation adopted by the Board "shall forfeit his right to be again licensed" (section 1203c) and the plaintiff must apply for a new license in September.

The case is similar in many respects to that of *Sage-Allen Co., Inc. vs. Wheeler,* 119 Conn. 667. In that case it is said (pp. 679, 680): "In furtherance of its general purpose and to carry out the details of its plan of regulation, the Legislature could properly vest the board [Optometrical Examiners] with power to make regulations reasonably adapted to assure the competency of optometrists and to prevent conduct on their part which would tend to do harm to the public."

"It would be too much to expect of the Legislature that it should specifically forbid all improper practices likely to arise, and of necessity the details of its plan must be left to the board administering the law to work out." (p. 678)

The practice of the occupation of barber is defined in section 1195c of the Cumulative Supplement to the General Statutes (1935) as follows: "To shave and trim the beard, to cut hair, to singe or shampoo hair, to give facial massage and treatments with oils, creams and other preparations, either by hand or mechanical appliances."

It may be said of the barber's trade with more force than was said in that case of optometry (p. 678): "The regulation of the practice of optometry as defined in the statute falls well within the power which the Legislature may exercise in the protection of the public health. . . ."

Of a rule, providing that "The advertising by any licensed optometrist . . . who is also engaged in the dispensing of ophthalmic products . . . of a definite fixed price for service or eyeglasses [etc.] is prohibited as immoral, fraudulent, dishonorable and unprofessional conduct . . . the purpose of this regulation being specifically to eliminate all price advertising," the court said (p. 677): "If the rule . . . is in keeping with the provisions of the statute and if it is reasonably adapted to the protection of the public from injuries to vision or physical or nervous impairment, there is no sound reason for holding it invalid . . .."

In that case the court pointed out the absence of facts in the finding upon which it could be determined whether the regulation (p. 680) "has a sufficient basis in the protection of the public to make it valid" and remanded it (p. 681) "that the facts upon which the validity of the regulation depends may be developed in view of the construction we have placed upon it and upon the statute."

The substance of the defendants' evidence is that as a result of advertising haircuts for less than 50 cents neighboring barbers who charge 50 cents are affected.

No rate has been established except by recommendations of the board which is a minimum of 40 cents.

The only other evidence is that of a defendant examiner who has said that he has found sanitary conditions bad where there have been price wars. It is not questioned, however,

that the defendants have the right to revoke licenses for insanitary conditions.

The plaintiff's evidence is in substance, that when he cut hair at a union rate of 50 cents he could not make a living but when he dropped his price to 25 cents and so advertised he doubled his receipts. While one of his witnesses explained this by averring that his customers got haircuts twice as frequently as formerly, the defendants' evidence indicates the fact to be that it was the number of men who got haircuts rather than the number of haircuts they got that increased the receipts and that one barber's gain was another's loss.

It must be borne in mind, however, that the plaintiff's right to conduct his business as he may see fit may only be interfered with upon grounds of public health and welfare.

It cannot be found from the evidence that the regulation may be treated as a health rule. The purpose and tendency of advertising is of course to increase business, and to say that because it does it is unhealthy would surely make the rule discriminatory as related to other trades. That it takes business from one and gives it to another can hardly be a legal reason for its prohibition for this again is the natural result of advertising. It is inescapable, in other words, that the real purpose of the rule is the one the defendants have purported to disavow—price fixing. They have attempted to do this by indirection.

Such is the tendency of the times—and law grows with the times—it may be that with proper support in fact the defendants might fix a price below which it would be unsafe to the public to contract to cut hair and so illegal—and illegal to advertise to do so. But that is neither the question before me nor, if it were, is there evidence upon which a finding of unsafety for reasons of health or public policy that would support such a rule might be made.

It appears, as the plaintiff claims, that the rule is arbitrary, is literally unreasonable, i.e., has no reason to support it, for the defendants deny price fixing to be its reason; and it is confiscatory for a violation of it forfeits the right of a barber to be again licensed and without a license he may not "follow the occupation of barber in this state." (Cum. Supp. [1935] §1195c).

In brief, it does not appear from the evidence that the reg-

ulation has "sufficient basis in the protection of the public to make it valid."

It is therefore declared invalid and illegal.