THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of HENRY D. DREWES, Respondent, *v.* ARLEN SERVICE STATIONS, INC., Appellant.

Court of Special Sessions of City of New York, Appellate Part, Second Department, August 1, 1940.

*Charles J. Bensky*, for the appellant.

*William C. Chanler, Corporation Counsel* [*Stanley Buchsbaum* and *Charles E. Ramsgate* of counsel], for the respondent.

PERLMAN, J. The council of the city of New York, on August 10, 1939, adopted Local Law No. 141, adding a provision to the Administrative Code, regulating the retail sales of gasoline (Art. 7, §§ B36–101.0–B36–103.0).

The ordinance makes it unlawful for any one to sell gasoline at retail " unless such seller shall post and keep continuously posted on the individual pump * * * a sign or placard not less than seven inches in height and eight inches in width, nor larger than twelve inches in height and twelve inches in width and stating clearly and legibly in numbers of uniform size, the selling price or prices per gallon of such gasoline so sold * * * together with the name, trade name, brand, mark or symbol, and grade or quality classification, if any, of such gasoline." The ordinance further provides:

" (b) No sign or placard stating the price or prices of gasoline other than such signs or placards as hereinabove provided shall be posted or maintained on the premises on which said gasoline is sold or offered for sale."

Another section of the same ordinance makes it unlawful for any person to sell or offer for sale gasoline at retail in any manner so as to deceive or tend to deceive the purchaser as to the price, nature, quality or identity thereof, etc. (§ B36–102.0.)

Violations of the ordinance are punishable by fines or imprisonment or both. (§ B36–103.0.)

The defendant, operating a gasoline station in the borough of Brooklyn, city of New York, has been convicted of a violation of this ordinance. It was admitted upon the trial that the defendant maintained upon his premises signs stating the price of gasoline, the dimensions of which exceeded the dimensions permitted by the ordinance. The ordinance is attacked as unconstitutional under both the Federal and State Constitutions. (See U. S. Const. 14th Amendt. § 1; State Const. art. 1, §§ 1, 6.)

It is recognized beyond any question that a municipality may, in the exercise of its police power, pass reasonable legislation for the purpose of protecting the public against the encroachment, selfishness and dishonesty of the individual. (*People* v. *Perretta*,

253 N. Y. 305; *People* v. *Luhrs*, 195 id. 377.) The police power, " a dynamic agency, vague and undefined in its scope " (per POUND, J., in *People ex rel. Durham Realty Corp.* v. *LaFetra*, 230 N. Y. 429, 443), is " the least limitable of the powers of government." (*District of Columbia* v. *Brooke*, 214 U. S. 138, 149.)

It is recognized that many statutes regulating the conduct of a lawful business have been found to be consistent with due process. (See cases cited in *Nebbia* v. *New York*, 291 U. S. 502.) For example, in *Cusack Co.* v. *City of Chicago* (242 U. S. 526), the Supreme Court of the United States has held that billboards may be prohibited in the interests of safety, morality, health and decency of the community. Support for the reasonableness of that ordinance was found in evidence that fires had been started in the accumulation of combustible material which gathered about such billboards, and that they afforded a convenient concealment and shield for immoral practices, and for loiterers and criminals. (242 U. S. 526, 529.) (See, also, *St. Louis Poster Adv. Co.* v. *City of St. Louis*, 249 U. S. 269.) In *Packer Corp.* v. *Utah* (285 U. S. 105) the court upheld a statute of the State of Utah forbidding the advertising of cigarettes and other tobacco products on billboards, street car signs and placards. Support for this statute was found in the general proposition that a State may, under the police power, regulate the business of selling tobacco products.

But even the police power must be exercised in harmony with the restrictions imposed in the fundamental law. (*Judd* v. *Board of Education*, 278 N. Y. 200, 215.) While our inquiry does not extend to the expediency, wisdom or necessity of the legislative judgment (*Standard Oil Co.* v. *City of Marysville*, 279 U. S. 582), it is our duty to determine whether or not the ordinance under attack is arbitrary, capricious and not reasonably necessary for the accomplishment of any legitimate purpose of the police power. (*People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126. Cf. *People ex rel. Publicity Leasing Co.* v. *Ludwig*, 218 id. 540.)

In the last analysis, the question is whether the ordinance is an unnecessary interference with a lawful business and trade. I am of the opinion that so much of the ordinance as prohibits a retailer of gasoline from advertising the price of his product except by the use of a sign attached to the dispensing pump, is arbitrary, unreasonable, oppressive and discriminatory. I believe that subdivision (b) of the section is not reasonably necessary for the accomplishment of any real or legitimate purpose in the exercise of the police power.

In *Yu Cong Eng* v. *Trinidad* (271 U. S. 500) a statute passed by the Philippine Legislature to aid the collection of taxes and pro-

hibiting the keeping of account books in any language, except English, Spanish or a local dialect, was held unconstitutional. The government endeavored to find justification of the statute in the many complaints in respect to the avoidance of taxation by Chinese merchants and the difficulty in the examination of their books. In *State* v. *Danberg* (—— Del. ——; 6 A. [2d] 596), decided May 1, 1939, an ordinance of the city of Wilmington, Del., passed for the purpose of promoting fair trade practices in reference to barber shops, made it unlawful, among other provisions, to advertise prices for barbering on the outside of any building in which a barber shop is located or in the window or on the door of any barber shop or any other place adjacent thereto, where it may be readily seen from the outside, or to advertise prices in any periodical, magazine or newspaper. The court held the statute to be unconstitutional, saying that there is very little difference between a barber advertising the price for which he sells his services to the public and a merchant advertising the price for which he sells hats and shoes. A similar regulation in the State of Connecticut, prohibiting the advertising of haircuts and shaves, was held invalid on the ground that it did not appear from the evidence that the regulation has " sufficient basis in the protection of the public to make it valid." (*Pagano* v. *Board of Examiners of Barbers*, 6 Conn. Supp. 130.)

The above cases are instances of statutes which imposed unnecessary and oppressive restrictions upon lawful occupations.

Subdivision (b) of the ordinance under attack seems to fall within the same category. As to the other provisions, I can see no criticism of the requirement (§ B36–101.0) compelling the posting on the individual pump or dispensing device of a sign of standard size, stating the price of gasoline. (*National Fertilizer Assn.* v. *Bradley*, 301 U. S. 178.) And, certainly, the prohibition in section B36–102.0, making it unlawful to sell or offer for sale gasoline at retail in any manner so as to deceive or tend to deceive the purchaser is valid.

In justification of subdivision (b), it is urged that some retailers of gasoline employ a so-called " circus " or " bushel " sign on which numerals and words are cleverly arranged to mislead the passing automobile driver. One answer to this contention is the section of the ordinance in question and other provisions of the Penal Law prohibiting misleading and false advertising.

To insure that there shall be no misleading advertising, the ordinance prohibits all advertising as to the price of gasoline, except a small sign of standard size on the gasoline pump. Of course, this is a simple method of eliminating an alleged evil. However, such a radical short cut cannot be supported as either reasonable or neces-

sary. Because of some instances of false advertising, honest trades-men are arbitrarily deprived of the beneficial use and the free enjoyment of their private property, and a tradesman is prevented from using his premises for honest advertising. The sale of retail gasoline offers no greater opportunity for fraud than the sale of any other commodity. The passing automobile driver is in no need of greater protection than the passing pedestrian. If this provision of the ordinance is permitted as to retail gasoline dealers, what about the butcher, the baker and the candlestick maker? (*Wolff Packing Co.* v. *Court of Industrial Relations*, 262 U. S. 522.) The number of statutes on this subject would then be multiplied endlessly and would be limited only by the number of different vocations and businesses.

My views on this subject are supported by two recent decisions of courts in other States interpreting similar statutes. In *Regal Oil Co.* v. *State* (123 N. J. Law, 456; 10 A. [2d] 495) a similar statute in the State of New Jersey was held unconstitutional.

*State of Connecticut* v. *Miller* (126 Conn. 373; 12 A. [2d] 192), decided by the Supreme Court of Connecticut on February 23, 1940, involved the constitutionality of a similar statute. The last two sentences of the Connecticut statute prohibited a retailer of gasoline from posting any signs showing the sale price of the gasoline, except the standard sign attached to the pump. This provision is identical with subdivision (b) of the ordinance under attack. The Supreme Court of Connecticut unanimously held that the last two sentences of the Connecticut statute were unconstitutional and invalid. In its opinion the court wrote: " We are not able to see, either from the provisions themselves or from the facts found, how they could have any appreciable effect in protecting the public from fraud. It is apparent from the fact that advertising signs for other kinds of business carried on beside the highways, or even by operators of gasoline stations, are not similarly restricted, that the purpose was not to promote the safety of travelers upon the highway."

A reported case taking an opposite view is *Slome* v. *Godley* (—— Mass. ——; 23 N. E. [2d] 133), decided on October 26, 1939, by the Supreme Judicial Court of Massachusetts.

I conclude that subdivision (b) of section B36–101.0 is invalid. The other provisions of the section remain undisturbed.

The judgment of conviction should be reversed, the complaint dismissed, and the defendant discharged.

DeLuca, J., concurs, with opinion; Bayes, P. J., dissents, with opinion.

DeLuca, J. (concurring). This appeal involves a consideration of section B36–101.0 of the Administrative Code of the City of New York which prescribes the size and contents of signs that must be placed on the gasoline dispensing pumps of a retailer of gasoline and which, in subdivision (b) thereof, prohibits the placing of a sign stating the price of gasoline on any other portion of the premises upon which such gasoline is offered for sale. No other commodities sold or offered for sale by such retailer are affected by these Code provisions.

The defendant has been convicted of a violation of said subdivision (b) and on this appeal he attacks the constitutionality thereof.

These provisions were enacted under the general authority conferred upon the municipality in such matters and not by virtue of any specific authority. They are not declarative of the legislative policy of the State The inquiry in this instance is whether subdivision (b) constitutes a reasonable, capricious or arbitrary regulation.

It is sought to justify this legislation on the theory that it was designed to prevent fraud upon the public. It is claimed that some retailers of gasoline employ signs upon which numerals and words are so arranged as to convey the impression to the passing motorist that he can purchase gasoline at less than the prevailing prices; furthermore, that sometimes a sign in no way misleading on its face may be so placed as to lead prospective customers to believe that it relates to gasolines other than the gasoline to which it actually refers. As a result of such misleading signs motorists are often induced to enter upon a gasoline station, whereupon after closer inspection of the signs or possible inquiry, they find that they cannot obtain the advantageous purchase they expected to make.

These sharp practices indulged in by some retailers are indeed reprehensible. They may even be illegal under the provisions of the Penal Law prohibiting misleading and false advertising. They are certainly outlawed by section B36–102.0 of the Administrative Code which makes it unlawful for any person to sell or offer for sale gasoline at retail in any manner so as to deceive or *tend* to deceive the purchaser as to the price, nature, quality or identity thereof.

In my opinion, however, such actions by some retailers are not sufficient justification for the prohibitory provisions of subdivision (b) affecting all retailers, the honest as well as the dishonest ones. The right to advertise the price of one's wares is incidental to one's right to engage in business and has the sanction of age-long custom among merchants. To deprive defendant of this right in the use of · his property for the reasons advanced is arbitrary and unreasonable.

A truly regulatory statute prescribing that all gasoline price signs anywhere on a gasoline station shall be in lettering or numerals of uniform size and even reasonably limiting the size and reasonably restricting the location of such signs might be deemed a reasonable method of controlling the evil complained of. The means adopted in the challenged statute to secure the desired ends are unreasonable.

Pursuant to section B36-101.0 of the Code the size of the sign which must be placed on the dispensing pump or device is limited to seven inches in height and eight inches in width as a minimum and twelve inches in height and twelve inches in width as a maximum. On this sign must clearly and legibly appear in numbers of uniform size the selling price per gallon of the gasoline offered for sale together with the name, trade name, brand, mark or symbol, and grade or quality classification, if any, of such gasoline. In addition, there must also be stated on such sign, separately from the selling price, the amount of the governmental tax to be collected. (Subd. a.) It is evident that the height of the numerals expressing the selling price of the gasoline will necessarily be very small in proportion to the height of the sign itself, so small in fact that one may well doubt that it can be seen at all by the passing motorist. The practical effect is that a prospective purchaser is compelled to enter the gasoline station to ascertain the selling price and there make his choice after reading the sign. In this respect he is put to the same inconvenience as the person who is attracted to a gasoline station by a misleading sign.

It may well be argued with some force that the effect of the provisions regarding the size and contents of the signs on the pumps and the absolute prohibition against placing signs elsewhere on the gasoline station amounts to a virtual prohibition of all sign advertising because of the ineffectiveness of the prescribed pump signs as a medium of announcing prices to the riding public. But, surely, the prohibitory provisions of subdivision (b), when considered in the light of the regulations regarding the pump signs, cannot be sustained.

The practical result of these Code restrictions upon the display of price signs is the stifling of effective competition. This tends to open the way for other abuses which affect the consuming public who have an interest in the preservation of the principle of active competition.

Similar statutes have been declared unconstitutional in the States of New Jersey and Connecticut. (See *Regal Oil Company* v. *State*, 123 N. J. Law, 456; 10 A. [2d] 495, and *State of Connecticut* v. *Miller*, not officially reported at this time, decided by the Supreme Court of Connecticut on February 23, 1940.)

In the Massachusetts case of *Slome* v. *Godley* (23 N. E. [2d] 133) a contrary result was reached. The decision in that case may conceivably have been influenced by the fact that the whole of the sign, maximum size eight by ten inches, according to the opinion, could be utilized in designating the price of the gasoline and that it, therefore, had advertising value sufficient to inform passing motorists of the seller's price. In this respect the Massachusetts State statute differs from our Administrative Code.

I concur in declaring subdivision (b) of section B36–101.0 of the Administrative Code unconstitutional.

BAYES, P. J. (dissenting). On August 10, 1939, the council of the city of New York adopted Local Law No. 141, which adds to the Administrative Code a new article as follows:

## " ARTICLE 7.
### " RETAIL SALES OF PETROLEUM PRODUCTS.

" § B36–101.0. It shall be unlawful for any person, firm or corporation to sell or offer for sale at retail for use in internal combustion engines in motor vehicles any gasoline unless such seller shall post and keep continuously posted on the individual pump or other dispensing device from which such gasoline is sold or offered for sale a sign or placard not less than seven inches in height and eight inches in width nor larger than twelve inches in height and twelve inches in width and stating clearly and legibly in numbers of uniform size the selling price or prices per gallon of such gasoline so sold or offered for sale from such pump or other dispensing device together with the name, trade name, brand, mark or symbol, and grade or quality classification, if any, of such gasoline.

" (a) The amount of governmental tax to be collected in connection with the sale of such gasoline shall be stated on such sign or placard and separately and apart from such selling price or prices.

" (b) No sign or placard stating the price or prices of gasoline other than such signs or placards as hereinabove provided shall be posted or maintained on the premises on which said gasoline is sold or offered for sale.

" § B36–102.0. It shall be unlawful for any person, firm or corporation to sell or offer for sale gasoline at retail in any manner so as to deceive or tend to deceive the purchaser as to the price, nature, quality or identity thereof, or to sell or offer for sale from any pump or dispensing device any gasoline other than that gasoline manufactured or distributed by the manufacturer or distributor marketing such gasoline under the name, trade name, brand, symbol or mark affixed to or contained on such pump or other

dispensing device, or to substitute, mix or adulterate gasoline sold or offered for sale under a name, trade name, brand, symbol or mark.

" § B36–103.0.    Violation of any of the provisions of this article shall, upon conv'ction therefor, be punished by a fine of not more than two hundred fifty dollars or by imprisonment for not more than sixty days, or by both such fine and imprisonment."

The defendant has been convicted of maintaining upon premises operated by him as a gasoline station signs in dimensions larger than prescribed in subdivision (b) of section B36–101.0 above set forth. This provision is challenged by defendant as in contravention of section 6 of article 1 of the Constitution of the State of NewYork as well as of the Fourteenth Amendment to the Constitution of the United States.    In support of this appeal the defendant relies mainly upon the case of *Regal Oil Co.* v. *State of New Jersey* (123 N. J. Law, 456; 10 A. [2d] 495), decided December 5, 1939.    Without setting forth the provisions of the New Jersey statute it may be said the court had before it in that case substantially the same question as that before the court in the instant case.    In its opinion the New Jersey court stated that the non-conforming signs which were used in addition to the signs prescribed by the statute were for the purpose of attracting the purchasing power of the approaching and passing motorist.    Upon the entire case the court concluded that the statute constituted an unlawful interference with the private business of the prosecutor and imposed unreasonable and unnecessary restrictions upon such business.

Another case brought to the attention of the court is that of *State of Connecticut* v. *Miller* (decided by the Supreme Court of Connecticut February 23, 1940).    In that case the court had under consideration the constitutionality of a certain statute which required the displaying on each gasoline dispensing pump of a sign of limited dimensions showing the retail price per gallon, the combined State tax and Federal tax applicable thereto and the total cost thereof to the purchaser, in three separate sets of figures of prescribed dimensions, and prohibiting any other sale price signs at or within the vicinity of the premises where such products were offered for sale or sold at retail.    The statute further provided that " retail dealers shall not post or display signs showing the sale price of petroleum products other than motor fuels, which signs shall exceed the dimensions and specifications provided herein for motor fuel price signs."    The court held the prohibitory portions of the section unconstitutional on the ground that they constituted an unreasonable interference with the right to carry on a lawful business    The court stated it was unable to see " either from the provisions themselves or from the facts found, how they could have any appreciable effect in protecting the public from fraud."

These cases, as it seems to me, amount to the substitution of the judgment of the court for that of the Legislature both as to the existence of the fraudulent practices and the reasonableness of the legislation designed to correct the evils sought to be remedied. As against the foregoing decisions we have the recent case of *Slome* v. *Godley* (—— Mass. ——; 23 N. E. [2d] 133), decided by the Supreme Judicial Court of Massachusetts October 28, 1939. In this case the court had before it a similar statute which required every retail dealer of motor fuel to conspicuously mark his pumps or other dispensing equipment with the price of the motor fuel dispensed from the pump or from the dispensing equipment. The price signs so to be used were restricted in size and it was provided that no price signs of motor fuel so dispensed " or signs relating to the price of such fuel shall be used or displayed on or about the premises where motor fuel is sold at retail other than the signs provided herein to be posted upon the pumps or dispensing equipment." In its opinion the court pointed out that the statute deals only with signs designating the price of motor fuel and does not establish prices or impair the freedom of the owner to determine the selling prices of his goods; and further that the statute " in no way limits the proprietor of a filling station in using or displaying, upon any portion of the premises, signs of such dimensions as he may deem convenient, with lettering of such size as he may consider advantageous, advertising every article, including motor fuel, that he has for sale; and in every instance, with the single exception of motor fuel, he may set forth upon such signs the prices of the various articles." The court further says (at p. 135): " This is not a case where a dealer is prohibited from advertising the price of a commodity which he sells, but, on the contrary, is one where he is required to display the price upon the mechanical device through which the goods are delivered to the customer." The position taken by the court in passing upon the constitutionality of the statute is that the legislative enactment should only be struck down when the legislative finding " cannot be supported upon any rational basis of fact that can be reasonably conceived to sustain it."

We thus have the decisions of the New Jersey and Connecticut courts above referred to entertaining one view on substantially the same question as against that of the Supreme Judicial Court of Massachusetts in the *Slome* case (*supra*).

In my view of the matter this is not a case in which the court should substitute its judgment for that of the Legislature either as to the existence of the fraud and deception sought to be remedied or the reasonableness of the statute enacted to prevent misleading the public.

Among the grounds urged in condemnation of the statute are the following:

(a) That it is unreasonable, capricious and arbitrary. This might be urged with more convincing effect it it were to be assumed that the legislative body did not have before it a situation involving fraudulent and misleading practices in the sale of motor fuel which it sought to remedy by the enactment of the legislation. What is really meant by this criticism is, I take it, that the statute is more drastic than necessary to meet the evils complained of. As to that I consider the judgment of the legislative body should not be disturbed by the court.

(b) The practice sought to be corrected may be reached under existing statutes thus designed to prevent misleading and false advertising as well as section B36–102.0, which makes it unlawful to sell or offer for sale gasoline at retail in a manner so as to deceive or tend to deceive the purchaser as to price, quality or identity thereof. As to this it may be said that the Legislature need not confine itself to a single enactment where it seeks to obtain a desired result. (See *People* v. *Cannon,* 139 N. Y. 32.)

(c) That the right to advertise is incidental to the right to engage in business, the deprivation of which is arbitrary and unreasonable. As to this it may be pointed out that under certain circumstances the use of billboards may be entirely prohibited. (See *Cusack* v. *City of Chicago,* 242 U. S. 526.)

(d) The means adopted in the challenged statute to secure the desired end are unreasonable. As to this it may be noted that our courts have repeatedly held that a municipality may in the exercise of its power enact legislation designed to protect the public against fraudulent and deceptive practices. (See *People* v. *Perretta,* 253 N. Y. 305; *People* v. *Luhrs,* 195 id. 377; *People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 id. 429; *People* v. *Beakes Dairy Co.,* 222 id. 416.)

(e) That the provisions in question and the contents of the sign amount to a virtual prohibition of all sign advertising. This has a bearing upon the question of the effect of the signs required to be attached to the dispensing pumps as a means of advertising. It does not seem unreasonable to assume that when the public know that the price of motor fuel may be found in one place, and only one, that such signs have an advertising effect. As a matter of fact by virtue of legislative enactment the public would know where to look for the price of motor fuel and would not suffer any inconvenience in taking the time and trouble necessary to obtain the desired information. In this case it may be noted that the size of the sign and of the letters are not the only factors involved in effective advertising.

(f) That the statute amounts to a stifling of competition. As to this it would rather seem that all dispensers of motor fuel are merely placed upon an equal basis as to the advertising of the price thereof without any limitation whatsoever as to the character of the signs to be used in advertising the brand of motor fuel and in addition to the brand or brands, and the price of oil, grease, and other motor supplies and accessories. To my mind it would be more accurate to say that competitive methods are limited or restricted rather than that competition is stifled.

It is of course to be admitted that substantial arguments may be presented in opposition as well as in support of the challenged statute. As for myself I cannot say that the statute appears to me to be so unreasonable, capricious or arbitrary as to warrant holding it unconstitutional under the provisions of the Federal or State Constitutions. Accordingly, I vote to affirm the judgment.