81 So.2d 188 (1955)
TOWN OF MIAMI SPRINGS et al., Appellants,
v.
C.E. SCOVILLE, d/b/a Ed's Sunoco Service Station, Appellee.
Supreme Court of Florida. Division A.
June 15, 1955.
Anderson & Nadeau, Miami, for appellants.
Ralph F. Miles, Hialeah, Evans, Mershon, Sawyer, Johnston & Simmons and Thos. McE. Johnston, Miami, for appellee.
*189 ROBERTS, Justice.
The question here is on the validity of an ordinance of the Town of Miami Springs regulating the size and location of signs displayed by gasoline filling stations to advertise the price of their products and services. As to petroleum products, the ordinance required the price sign to be not larger than 12 inches in height and 12 inches in width and to be posted on the dispensing equipment "and in no other place about the premises." As to a price sign for services, the requirement was the same as to size, and the requirement as to location was "not less than 15 feet from any public sidewalk." The lower court held the ordinance to be unconstitutional, and the Town has appealed.
This court has not heretofore been called upon to determine the validity of an ordinance regulating this particular type of price sign. In the final decree appealed from, the able Chancellor discussed the decisions of courts of other states and adopted the view of those courts which hold that such an ordinance is an unconstitutional restraint on the use and enjoyment of one's business and property. His opinion, after stating the facts, reads as follows:
"This is not a novel controversy. Cases similar in material features have been passed upon by courts of a number of states, even similar to restrictions as to size of price signs for gasoline stations to the exact figures of 12" by 12", and as to location on the pumps, in some cases.
"First, however, it is necessary to consider the only authority cited by the counsel for the Town, which is Merritt v. Peters, Fla., 1953, 65 So.2d 861, 862. There, in an area zoned for limited business, including motels, the County Commissioners, as a zoning regulation under an enabling zoning statute, adopted a regulation to the effect that motel signs should not exceed 40 square feet. That would allow a sign over 6 feet high and 6 feet wide, or 8 by 5 feet.
"The party who complained there had erected such a sign more than four times the size of the 40 square feet allowed.
"Against his complaint that the regulation was arbitrary and unreasonable (the Court agreed there was no factor of health, safety or morals involved, and there was no question of fraud or deceit), the Court said `but we disagree * * * that the restriction cannot be sustained on aesthetic grounds alone'.
"Thus, Merritt v. Peters, supra, was materially different. It prevented name or advertising signs of excessive size, for aesthetic reasons only, in an area of somewhat limited zoning. No question was involved as to the authorized size name signs being inadequate or ineffective. No question of limitation of location on the property was involved. There was no question of the regulation causing loss of revenue, nor was there any showing or contention that the plaintiff was so situated that the regulation, as to him, was designed to and had the effect of aiding his competitor to his loss.
"In the present case, the plaintiff has a Sunoco Service Station. His product is different and unique in that he sells only one grade of gasoline, which is high test gas, at one price, being the equal of the price of `regular' gas as sold by his competitors. The other companies, almost without exception, sell two grades of gas. Regular gas and a `High Test gas'. Those companies price the high test at several cents per gallon above the price for Regular gas.
"The plaintiff established that after the Town began to enforce the ordinance against him, and he changed from using the larger sign, on the corner or edge of his property, and relied only on 12" by 12" signs on his pumps, his ability to properly advertise his lower High Test gas price was seriously affected, and he suffered a substantial drop in his business and earnings. In the case of this plaintiff, he not only argues for technical injuries through unconstitutional restrictions on the free business use of his property, but he shows real and substantial loss and injury.
"The portions of the ordinance which the plaintiff challenged are not shown to bear *190 reasonable relation to any public health, safety or morals. Certainly restricting gas price signs to one foot square, and retiring them to an inner part of the property was not done for aesthetic purposes, when one considers and observes the large advertising signs which flourish in the area in all businesses, including gas service stations. There is attached at this point and made a part of this decree a photograph which was filed in evidence. This picture shows plaintiff's service station; the size signs as to price of gas and their locations at the corner of the property which the restrictions of the ordinance would prohibit; the ineffectiveness of the smaller signs on the pump; and, incidentally, the unrestricted large advertising signs above the station and on adjoining businesses.
"This Court holds that there is no sufficient reason or basis in fact or law to justify the restrictions in question as an exercise of police power.
"The cases which have dealt with this question bear that out. Massachusetts cases, and some decisions in New York are to the contrary, but the weight of authority holds such restrictions to be unconstitutional.
"The Massachusetts case, Slome v. Godl[e]y, 1939, 304 Mass. 187, 23 N.E.2d 133, presumed that fraud on the public would be avoided. Other jurisdictions refused to follow that state's case. They find no basis for assumption of fraud, but on the contrary reason that a larger sign, stating the price for the product, will tend to prevent fraud.
"The Massachusetts court was influenced also by the fact that the restrictions as to size and location of gas price signs was by an act of the legislature of that state, from which the court found or assumed supporting legislative policy, which it felt it should uphold.
"In a Massachusetts case, which followed the first one, Merit Oil Co. v. Directors, etc., [319] Mass. [301], 65 N.E.2d 529, at page 532, the Court referred to a situation where the dealer sold one grade of gas, a feature which was not present in that case, but is present in the case at bar. The intimation was clear in that case that the court in Massachusetts would hold otherwise on facts such as there are in this case.
"About the same time the Slome case was decided in Massachusetts, similar restrictions were held unconstitutional by the courts of New Jersey and Connecticut in Regal Oil Co. v. State, 123 N.J.L. 456, 10 A.2d 495, and State v. Miller, 126 Conn. 373, 12 A.2d 192.
"This New Jersey case, Regal Oil Co. v. State, supra [123 N.J.L. 456, 10 A.2d 498], was almost exactly in point on the principal facts which appear in this case. There, a state law required price signs to be placed on the pump and prohibited display of such signs on any other portion of the property. Under that act regulations were made for such signs to be no larger than 8" by 10". The statute and regulation was violated by a service station operator posting a larger price sign, elsewhere on his property, facing the highway. His arrest and prosecution was the basis for the Court's consideration of the question. The operator was an independent retail dealer, and just as in the present case, he was able to undersell the large company retail outlets which were his competitors because he sold only one grade of motor fuel at a lower price than comparable grades as sold by his competitors. The Court recognized his right and necessity to advertise the price of his product. That Court's discussion of the matter and its decision appears so important on this question that the following lengthy quotation is included from the New Jersey case:
"`Prosecutor's (defendant below) proof is that the regulation sign on the pump or other dispensing equipment is "entirely insufficient" for that purpose; that it "completely destroys" the independent gasoline dealer's opportunity "to present his gasoline and his price (therefor) to the public" and that provisions of the challenged legislation "are essentially punitive and aimed solely at independent gasoline distributors and retailers." Prosecutor's *191 proofs further are that the use of such signs as exemplified by exhibits P-2 and P-3 are "indispensable" to it in the conduct of its business; and that the "one thing" it must have "to stay in business" is the right to display adequately sized price signs to attract the approaching and passing motorists.
"`Respondent's (the State) justification of the act was, broadly speaking, that it prevents ruinous price wars between dealers which it is claimed unstabilized the industry and that it further prevented fraud and misrepresentation in one form or another.
"`It is interesting to observe in passing, for whatever value, if any, it may have, that respondent's proofs in support of its claims come from representatives of associations whose membership consists of those who in the vast majority sell the motor fuel of the major oil companies. But be that as it may, the proofs disclose that there was no price war between the spring of 1938 and 1939. But assuming that there had been tense competition between dealers in the industry, we fail to see its relevency. In the absence of a valid agreement to the contrary, or the violation of any valid public law, we know of nothing which makes or should make dealers in the sale of motor fuels any more immune from tense competition than other merchantmen.
"`Nor do we discern any merit in the claim that subdivision (c), section 201 of the act of 1939 [N.J.S.A. 56:6-2(c)] can be supported upon the ground that it was enacted to prevent fraud and misrepresentation in the industry. A regulation sign posted on the pump or other equipment cannot be seen until one gets within a very few feet of it. The signs used by prosecutor [defendant below] (Ex. P-2 and P-3) can be seen for a considerably greater distance. If the regulation sign serves to prevent fraud and misrepresentation then surely prosecutor's larger signs should even more effectively tend to accomplish the same result. The court in the case of State of Connecticut v. Miller, (decided in Court of Common Pleas New Haven County on October 27, 1939) held that the prohibitory part of the act (use of signs other than those provided by statute) "was unreasonable, arbitrary and in its effect discriminatory". In reaching that result the court, among other things, said:
"`"If a retailer, as a competitive device, can and cares to undersell his rivals he is in effect forbidden to effectively advertise that fact `upon, at or within the vicinity of his premises' since he may not notify the public what his price is in letters and figures which `he who runs may read.' He is limited to signs which only he who stops may read."
"`For a contrary view see Mestichelli v. Valentine [173 Misc. 539, 18 N.Y.S.2d 405], and Slome v. Godley, Chief of Police of the City of Fitchburg, [304] Mass. [187], 23 N.E.2d 133, decided by the Supreme Judicial Court of Massachusetts on October 28, 1939, in which allegedly comparable legislation was sustained as a valid exercise of the police power of the state.
"`We have epitomized the provisions of the challenged act to indicate that they  as well as the provisions of the act of 1938  constitute a comprehensive code for fair and honest dealing. Both acts make plenary provisions to reach wrongdoers. But there is no charge here that prosecutor by the use of the non-conforming signs, practiced fraud or dishonesty; or that the use of the signs misled or deceived the buying public as to either the brand or the price of the motor fuel which it sold. Indeed, there could have been no such proof. For, as we have seen, prosecutor sold but one brand of motor fuel at but one price.
"`We are firmly of the opinion that the limitations imposed by the regulative signs are arbitrary and oppressive. *192 They unreasonably interfere with, curtail and deny to prosecutor, a method which is employed day in and day out by merchantmen to attract the buying power of the public. The regulation signs can accomplish but one thing and that is to deny prosecutor its guaranteed right to engage in its lawful private business. Such a result is fatal.
"`In fine, we conclude that subdivision (c), section 201, Art. II, chap. 62, P.L. 1939, N.J.S.A. 39:12-2(c)[1] does not, under the proofs of the case at bar, have any substantial relation to public health, public morals or some other phase of general welfare; it unlawfully interferes with and imposes unreasonable and unnecessary restrictions upon prosecutor's private business; it thus deprives prosecutor of its property without due process of law in violation of the 14th Amendment to our Federal Constitution; and is, therefore, unconstitutional.'
"The later cases showing recent consideration of this question, in certain instances show that the general view is against validity of such regulations. While the New York decisions are not uniform, there is respectable authority there condemning such restrictions. Compare People v. Pearl [173 Misc. 467], 17 N.Y.S.2d 825; People [on Complaint of Jones] v. Mestichelli [Mag. Ct.], 18 N.Y.S.2d 406; and People [on Complaint of Drewes] v. Arlen Service Station [175 Misc. 30], 21 N.Y.S.2d 1006. In Levy v. City of Pontiac [331] Mich. [100], 49 N.W.2d 80, [82,] decided 1951, there is the same restriction limiting signs to 12" by 12" and requiring them to be placed on pumps only. In striking this regulation the Court in that case said as follows:
"`The right to advertise one's merchandise is, subject to the police power mentioned, within the right to liberty and property. The denial of such right is a taking of property without due process of law. Ritholz v. City of Detroit, 308 Mich. 258, 13 N.W.2d 283.
"`Business practices, such as the one against which the ordinance in question is directed, have no detrimental effect on public health, peace, morals, safety and welfare. The size of signs which plaintiff may care to use, and their location at points other than the pumps, if such signs are not misleading or fraudulent, may not be regulated by the legislative body of defendant city.
"`With respect to the Massachusetts authorities cited by defendant, Slome v. Godley, 304 Mass. 187, 23 N.E.2d 133, followed in Merit Oil Company v. Director of Division of Necessaries of Life, 319 Mass. 301, 65 N.E.2d 529, we agree with the court's observation on the Slome case in State v. Miller, 126 Conn. 373, 12 A.2d 192, 194, that: "This decision appears to assume, without any substantial basis, that the prohibition is to prevent fraud and then to apply the unquestioned doctrine that legislation to prevent fraud is within the police power."
"`See Sperry & Hutchinson Co. v. McBride, 307 Mass. 408, 30 N.E.2d 269, 131 A.L.R. 1254, which cited People v. Victor, 287 Mich. 506, 283 N.W. 666, 124 A.L.R. 316.
"`We are in accord with the court's reasoning in Regal Oil Co. v. New Jersey, 123 N.J.L. 456, 10 A.2d 495, 498 * * *.'
"The case of Serve Yourself Gasoline Stations Ass'n v. Brock, (Cal. App.) 241 P.2d 593, [597,] decided in 1952, dealt with the statute differing from the one described in the last case, but which on the same basis sought to control the nature and location of such signs on the property. In rejecting the regulation, the Court in that case used the following language:
"`The statute before us differs from the statutes of several other states which have sought to restrict filling stations from advertising their product in that those statutes endeavored to bar *193 all advertising of prices save upon the very small signs permitted on the pumps, whereas our statute permits such additional price signs but only if they spell out the saving. However, the principle applied in holding such statutes unconstitutional is equally applicable here. The cases all proceed on the theory that such additional signs have no detrimental effect upon, and bear no reasonable relation whatsoever to, public safety, health, morals or welfare. State v. Miller, 1940, 126 Conn. 373, 12 A.2d 192; Regal Oil Co. v. State, 1939, 123 N.J.L. 456, 10 A.2d 495; Levy v. City of Pontiac, 331 Mich. 100, 49 N.W.2d 80; cf. People v. Mestichelli, 1939, Cty.Mag.Ct., 18 N.Y.S. 2d 406; Alabama Independent Serv. Station Ass'n v. McDowell, 242 Ala. 424, 6 So.2d 502; State v. Hobson, Del. 1951, 83 A.2d 846. Views contrary to those reached by the Connecticut, New Jersey and Michigan courts are those of Massachusetts and New York. Slome v. Godley, 304 Mass. 187, 23 N.E.2d 133; Merit Oil Co. v. Director of Division of Necessaries of Life, 319 Mass. 301, 65 N.E.2d 529, and People v. Arlen Service Stations, 284 N.Y. 340, 31 N.E.2d 184.
"`As in our view the act is unconstitutional as applied to the signs here involved the judgment appealed from should be and it is reversed.'
"The foregoing authorities do not purport to be a complete list of those where this question has been considered. They are enough, however, to show that the definite weight of authority, and the modern thought on the question, holds that the legislative restrictions of the kind involved here, particularly where it injures a party on a competitive basis, represent unconstitutional restraints on use and enjoyment of one's business and property, and a taking of property without due process of law, in violation of State and Federal constitutional guarantees."
We agree with the opinions and conclusions of law above expressed and adopt the same as our own.
Accordingly, the decree appealed from should be and it is hereby
Affirmed.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.
NOTES
[1] See now N.J.S.A. 56:6-2(c).