STATE OF MAINE, by Indictment, *vs.* HOWARD M. LATHAM.

Cumberland.   Opinion September 9, 1916.

*Demurrer.    Indictments.    Interpretation of Chapter 32, Public Laws of 1915.*

1. There may be different legislative regulations for different localities. Classes and conditions may differ, but, to be valid, the differentiations or classifications must be reasonable and based upon real differences in the situation, conditions or tendencies of things; otherwise, they offend against the provision in the Fourteenth Amendment to the Federal Constitution which forbids the State to "deny to any person within its jurisdiction the equal protection of the laws."

2. Chapter 32 of the Public Laws of 1915, which provides in substance that purchasers of milk or cream for the purpose of selling, or manufacturing the same into other products, shall pay the producer semi-monthly, and that violators of this provision shall be punished by a fine, is class legislation, is violative of the "equal protection of the laws" provision of the Fourteenth Amendment to the Federal Constitution, and therefore is void.

Indictment returned at Superior Court, Cumberland county for violation of chapter 32, Public Laws of Maine, 1915, said statute relating to the methods of payment to the producers of milk or cream by any firm or person purchasing same for the purposes of re-selling or manufacturing the milk or cream thus purchased. Respondent filed demurrer to said indictment. Indictment adjudged good; to which ruling, respondent filed exceptions. Exceptions sustained. Demurrer sustained. Indictment quashed.

Case stated in opinion.

*Jacob H. Berman,* County Attorney, for State.

*W. K. & A. E. Neal,* for respondents.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

SAVAGE, C. J.   The respondent stands indicted for a violation of chapter 32 of the Public Laws of 1915, and the case comes to this

court on exceptions to the overruling of his demurrer to the indictment.

The statute in question reads as follows: "Every person, firm or corporation purchasing cream or milk for the purposes of reselling or manufacturing the same into other products, shall pay the producer, unless otherwise provided for by written contract, semimonthly; payment to be made on the first day of each and every month for all cream or milk received prior to the fifteenth day of the preceding month, and payment to be made on the fifteenth day of each and every month for all cream or milk prior to the first day of the same month. Whoever violates the provisions of this act shall be punished by a fine of not less than ten dollars nor more than fifty dollars."

The indictment before us is clearly demurrable for want of sufficiently definite allegations of the time and place of the commission of the alleged offense. But the respondent has not made that point. The ground of demurrer relied upon is that the statute upon which the indictment is based is unconstitutional, in that it denies "the equal protection of the laws" which is guaranteed by the Fourteenth Amendment to the federal constitution. The answer of the State is that the statute is the legitimate, constitutional exercise of the police power of the State, which is its inherent power to establish regulations to promote the public health, safety, morals, peace, comfort, and welfare, *B. & M. R. R. Co.* v. *County Comrs.,* 79 Maine, 386; and that the Fourteenth Amendment does not impair the police power of the State.

That the Fourteenth Amendment was not designed to interfere with the proper exercise of the police power by the State was held in *Barbier* v. *Connolly,* 113 U. S., 26. And the doctrine has been reaffirmed since in many cases, both in the federal and in the State courts. It is settled doctrine. *State* v. *Montgomery,* 94 Maine, 192; *State* v. *Mitchell,* 97 Maine, 66; *State* v. *Leavitt,* 105 Maine, 76.

The statute in question when analyzed appears to be designed to compel purchasers of a particular product, intended for a particular use, to pay their purchase debts at particular times on pain of criminal prosecution, punishment by fine, and, of course, imprisonment for thirty days, if the fine is not paid. R. S., ch. 136, sect. 12. Whether such a statute, designed to aid in the collection of mere

civil obligations by the use of the strong arm of the criminal law is within the proper exercise of the police power is at least questionable. Certainly it is not unless the regulation intended be for the promotion of the public health, safety, morals, comfort or welfare. As was said by the court in *Wyeth* v. *Board of Health,* 200 Mass., 474,—"no other interference of the public to the detriment of an individual is permissible."

But passing this point without further discussion, we come to a consideration of the Fourteenth Amendment as applied to this statute. The Amendment forbids the State to "deny to any person within its jurisdiction the equal protection of the laws." It forbids what is called class legislation. Its meaning and effect, as it relates to the question now before us, have been fully discussed in the recent cases of *State* v. *Mitchell,* supra, and *State* v. *Leavitt,* supra, and the discussion need not be repeated. In a word, discrimination as to legal rights and duties is forbidden. All men under the same conditions have the same rights. Diversity in legislation to meet diversities in conditions is permissible. But if in legislative regulations for different localities, classes and conditions are made to differ, in order to be valid, "these differentiations or classifications must be reasonable and based upon real differences in the situation, condition or tendencies of things. Arbitrary classification of such matters is forbidden by the Constitution. If there be no real difference between the localities, or business, or occupation, or property, the State cannot make one in order to favor some persons over others." *State* v. *Mitchell,* supra; *Pearsons* v. *Portland,* 69 Maine, 278; *State* v. *Furbush,* 72 Maine, 493; *State* v. *Montgomery,* 94 Maine, 192; *Yick Wo* v. *Hopkins,* 118 U. S., 356; *Strander.* v. *West Virginia,* 100 U. S., 303; *Gulf C. & S. F. R. Co.* v. *Ellis,* 165 U. S., 150; *Cotting* v. *Kansas City Stockyards Co.,* 183 U. S., 79; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S., 540.

This statute does not apply to all classes of debtors, but to one class. It does not apply to all debts incurred by purchase of products, but to one class of debts. It requires semi-monthly payment for milk or cream of a producer, but not for any other product bought of a producer, It requires the purchaser of milk who is a middleman, or manufacturer of milk products to pay, but does not require him to pay who buys for other purposes. It gives the milk producer a strong club to aid in the collection of debts which

is not given to other creditors. It subjects a class of debtors to liability of criminal prosecution to which other classes of debtors are not subjected. Such discriminations, unless based upon some real differences in condition, or situation, or necessities concerning the public health, welfare and so forth, offend against "the equal protection of the laws" clause of the federal constitution, and the statutes which make them are invalid.

In what way does compulsory payments of the purchase price to producers of milk tend to promote the *public* health, safety, morals or welfare? What reasonable ground of discrimination is there between producers of milk, and producers of hay, or of potatoes, or of oats, in the matter of payment for products? What real difference, so far as public health and welfare are concerned, is there between producers and other vendors? Why should not the middleman be protected as well as the producer? If the producer of milk can properly be aided in this way in the enforcement of his claims, why, with equal reason, may not the man who sells it to the consumer? Why may not grocerymen and dealers in dry goods be given this aid in collecting their bills? Again, to go back to the text, what real difference is there which entitles the milk producer who sells to purchasers for resale or manufacture to protection, while he who sells to others is not protected? Why should one who purchases for resale or manufacture be prosecuted and fined for non payment, while he who purchases for any other purpose is not? We are unable to find satisfactory answers to these questions. The arguments suggest none. We are constrained to the conclusion that there are none which can relieve this statute of its constitutional infirmity. It is class legislation. Its discriminations are not based upon any real differences in situation or condition. We feel compelled to hold that it conflicts with fundamental laws and is, therefore, of no effect.

We may add that our atention has been called to a class of cases in which some courts have sustained the constitutionality of statutes requiring corporations to pay their employees weekly or semi-monthly. We allude to this merely to say that the cases are not in our judgment analogous to the one at bar.

*Exceptions sustained.*
*Demurrer sustained.*
*Indictment quashed.*