THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ANTONIO PERRETTA, Respondent.

Actions 1 and 2.

(Argued March 17, 1930; decided April 8, 1930.)

Hamilton Ward, Attorney-General (George L. Flanders, Louis B. Shay and Samuel H. King of counsel), for appellant. The statute is constitutional. (People .v. Beakes Dairy Co., 222 N. Y. 416; People v. Teuscher, 129 Misc. Rep. 94; 222 App. Div. 791, 248 N. Y. 454; City of Buffalo v. Hawks, 226 App. Div. 480; Dunham v. Ottinger, 127 Misc. Rep. 683; 243 N. Y. 423; Nash v. Loughman, 220 App. Div. 549; 247 N. Y. 649; Bareham v. City of Rochester, 128 Misc. Rep. 642; 221 App. Div. 36; 246 N. Y. 140; Abounader v. Strohmeyer & Arpe Co., 243 N. Y. 458.) The regulation is a valid exercise of the police power of the State and offends neither the State nor the Federal Constitution. (People v. Federated Radio Corp., 216 App. Div. 250; People v. Luhrs, 195 N. Y. 377; People v. Weller, 237 N. Y. 316; People ex rel. Nechamcus v. Warden, 144 N. Y. 529; Biddles, Inc., v. Enright, 239 N. Y. 354; Holden v. Hardy, 169 U. S. 366; Guffanti v. National Surety Co., 196 N. Y. 452; Musco v. United Surety Co., 196 N. Y. 459; People v. Brazee, 183 Mich. 259; 241 U. S. 340; Lasher v. People, 183 Ill. 226; State v. Wagener, 77 Minn. 483; State v. Bowen & Co., Inc., 86 Wash. 23; Jacobson v. Massachusetts, 187 U. S. 11; Campagnie Francaise v. Louisiana, 186 U. S. 380; Noble State Bank v. Haskell, 219 U. S. 104.) The provision in the statute for the payment of any balance on the bond into the State treasury is constitutional. (Phœnix Indemnity Co. v. Staten Island R. T. Ry. Co., 251 N. Y. 127; People v. Griswold, 213 N. Y. 92.)

Nicholas G. Powers for respondent. The statute is unconstitutional. (People v. Beakes Dairy Co., 179 App. Div. 972; 222 N. Y. 416; People v. Gillson, 109 N. Y. 389; Grossman v. Caminez, 79 App. Div. 15; People v. Murphy,

195 N. Y. 126; *Matter of Young*, 209 U. S. 123; *Gulf, C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150; *People* v. *Wellar*, 237 N. Y. 316; *Tyson* v. *Banton*, 273 U. S. 417; *People* v. *Worden*, 183 N. Y. 223; *Merrick* v. *Halsey*, 242 U. S. 568; *Hall* v. *Geiger*, 242 U. S. 539; *Caldwell* v. *Sioux Falls Stock Yard Co.*, 242 U. S. 559.)   The provision that the penalty of the bond after the payment of debts shall be confiscated is unconstitutional.   (*Phœnix Indemnity Co.* v. *Staten Island Ry. Co.*, 251 N. Y. 127.)   Interference under the police power must be in response to a great public need, and is not warranted in this matter.   (*Noble State Bank* v. *Haskell*, 219 U. S. 104; *Canfield* v. *United States*, 167 U. S. 518; *Hudson Co. Water Co.* v. *McCarter*, 209 U. S. 349.)

POUND, J.   The actions are each brought to recover a penalty of $100 on the ground that defendant carried on the business of conducting a milk-gathering station or plant without a license, in violation of section 252 of the Agriculture and Markets Law (Cons. Laws, ch. 69).

Each complaint states a cause of action in proper form but the defendant challenges the constitutionality of the law requiring him to obtain a license, on the ground that it denies to him the equal protection of the law and deprives him of his liberty without due process of law, contrary to the guarantees of the Fourteenth Amendment to the United States Constitution.

The act in question prohibits any person or corporation from operating a milk-gathering station, manufactory or plant where milk or cream is received or purchased from producers for sale or resale or for manufacture unless licensed by the Commissioner of Agriculture and Markets. The section requires that an applicant for license shall satisfy the Commissioner of his character, financial responsibility and good faith in seeking to operate a milk-gathering station or plant, and shall pay a license fee of ten dollars.   No license shall be issued unless the

applicant shall execute and file with the application a bond, or be relieved from filing the same as provided in the next section. Section 253 of the same act provides that the security required shall be a surety company bond in an amount approved by the Commissioner, and shall be conditioned "for the faithful compliance by the licensee with the provisions of this chapter, *and for the prompt payment of all amounts due to producers for milk or cream sold by them to such licensee, during the license year.*" Section 253 further provides that upon default by the licensee in the payment of any money due for the purchase of milk or cream, the creditor may file with the Commissioner a verified statement of his claim, and if the same has been reduced to judgment, a transcript of said judgment. The section then provides: "Upon default by the licensee in any of the conditions of the bond, an action upon the bond shall be brought by the commissioner. All moneys collected upon such bond shall be applied by the commissioner, first, to the payment ratably of all verified claims promptly filed with the commissioner after reasonable notice to present claims arising during the license period in connection with which the bond was given *and the balance shall be paid* into the state treasury." The bond is not required if the Commissioner is satisfied from an investigation that the applicant is solvent and possessed of sufficient assets to reasonably assure compensation to probable creditors.

In brief, the law limits the right of persons or corporations to conduct milk-gathering stations as defined by the act to those of approved character, financial responsibility and good faith, licensed by the Commissioner for the purpose, after giving an approved bond to secure the prompt payment of all amounts due to producers or, in lieu thereof, satisfying the Commissioner of their ability to pay probable creditors.

This act is, in substance, the re-enactment of a former law which was before the court for consideration in

*People* v. *Beakes Dairy Co.* (222 N. Y. 416; annotated, 3 A. L. R. 1271) and was there upheld as a proper regulation of the reserved power to amend the charters of domestic corporations, expressly reserving the question of the power of the Legislature thus to regulate the business of individuals. A corporation is a person and as such is entitled to the equal protection of the laws (*Liggett Co.* v. *Baldridge,* 278 U. S. 105) and if the legislation is a competent exercise of legislative power over corporations, it would seem that it is also a proper exercise of such power over individuals. (*Matter of Mount Sinai Hospital,* 250 N. Y. 103.)

The police power is " the least limitable of the powers of government." (*District of Columbia* v. *Brooke,* 214 U. S. 138, 149.) It extends to all the great public needs. (*Camfield* v. *United States,* 167 U. S. 518.) The validity of police regulations must depend on the circumstances of each case and the character of the regulation, whether arbitrary or reasonable. A legitimate public purpose may always be served without regard to the constitutional limitations of due process and equal protection. (*People ex rel. Durham Realty Co.* v. *La Fetra,* 230 N. Y. 429; *New York ex rel. Bryant* v. *Zimmerman,* 278 U. S. 63.)

The Legislature has a wide discretion in protecting the public from the dishonest or irresponsible. (*Roman* v. *Lobe,* 243 N. Y. 51; *People* v. *Teuscher,* 248 N. Y. 454.) The question is how to apply the test. Is it a public evil to permit irresponsible persons and corporations to operate milk-gathering stations although they may engage in many other legal callings at will? If so, milk gatherers may be put into a particular class. (*New York ex rel. Bryant* v. *Zimmerman, supra.*) In the *Beakes* case, KELLOGG, P. J., in a dissenting opinion in the Appellate Division (179 App. Div. 942), states the conditions which called forth the law as follows: " It is vital to the public welfare that the cities of the State be supplied with pure and wholesome milk. It is of the

utmost importance to the public welfare that the farmers should be induced to produce milk for use in the cities and that the persons purchasing and shipping milk for city use shall be responsible persons so that the seller shall receive pay for his milk. It is a fact too well known to need discussion that the farming community has suffered great damage by irresponsible persons buying on credit their milk for shipment to the large cities without paying therefor. Such transactions naturally tend to convince the farmer that it is better for him to limit his production of milk or take it to the home factory to be manufactured there, dealing with people whom he knows rather than to sell it for city use. It is apparently recognized as impracticable that the payments should be made to the farmer upon the delivery of each sale of milk. When a person seeks to buy milk from the farmers of the State to ship to the cities of the State for use and consumption, his transactions affect the public interest, and the welfare of the farming community means the welfare of the public, and the State may properly protect the farmer from irresponsible dealers who seek his milk for shipment to the cities. This law, as we have indicated, has more than one aspect. It naturally benefits the farmers, but it guarantees the city a supply of milk. The farmer is not naturally a financier, and when he produces the milk he should be reasonably assured that he is to have its value, and the State may prevent irresponsible people from taking away his milk without giving some reasonable surety that it will be paid for. In the absence of some such provision, the shipment of milk to the cities would fall off and be greatly limited."

The producer of milk for the city market desires to find a ready purchaser near at hand to take his product from the source of supply to the point of consumption. He cannot peddle his product from door to door or hold it to await a rise in market prices or a cash purchaser.

He must sell it to milk gatherers; deliver it fresh and often on credit. Such are the conditions of the market peculiar to the handling of milk. The law deals with a definite class, *i. e.*, the milk gatherers. It is not wholly for the benefit of the farmer. If it gives him " a club to aid in the collection of debts which is not given to other creditors " (*State of Maine* v. *Latham*, 115 Me. 176), it gives it to him to keep open the stream of milk flowing from farm to city as well as to guard him from financial loss.

When the Legislature takes notice of the dependency of the city on the farm and of the hard and often unremunerative character of farm life, we think it may protect the farmer from fraud arising from the peculiar conditions under which milk is produced and sold.

That the evil is not imaginary or local is evidenced by the like legislation of other States as follows: Connecticut: L. 1919, ch. 194; Maine: L. 1915, ch. 32; Minnesota: L. 1927, ch. 427; New Hampshire: Public Laws, ch. 164, as amd. by L. 1929, ch. 35; New Jersey: L. 1917, ch. 74; Rhode Island: General Laws (1923), ch. 204; Vermont: General Laws (1917), ch. 239, § 5727, as amd. by L. 1923, No. 103; L. 1929, Nos. 105, 106; Wisconsin: L. 1925, ch. 389, § 1 (Statutes Wis. (1925), § 99.32).

The Connecticut statute was declared unconstitutional as class legislation in *State* v. *Porter* (94 Conn. 639). The Wisconsin act and the Maine act vary in detail from the New York statute but they have also been held unconstitutional for like reasons in *State ex rel. Hickey* v. *Levitan* (190 Wis. 646) and *State of Maine* v. *Latham* (*supra*). The reasoning in these cases rests on the abstract doctrine of liberty of contract rather than the practical necessities of the case. The Supreme Court of the United States in *Payne* v. *Kansas* (248 U. S. 112, followed in *Arnold* v. *Hanna*, 276 U. S. 591, affg. 315 Mo. 823) had before it a State law forbidding the sale of farm produce on commission without an annual license obtained on a

proper showing of character, responsibility, etc., and a bond conditioned to make honest accounting. The court said with directness and brevity: "Plaintiffs in error maintain that the statute is class legislation which abridges their rights and privileges, that it deprives them of the equal protection of the laws and also of their property without due process of law — all in violation of the Fourteenth Amendment.

"Manifestly, the purpose of the State was to prevent certain evils incident to the business of commission merchants in farm products by regulating it. Many former opinions have pointed out the limitations upon powers of the States concerning matters of this kind, and we think the present record fails to show that these limitations have been transcended. *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342; *Brazee* v. *Michigan*, 241 U. S. 340; *Adams* v. *Tanner*, 244 U. S. 590."

A legalistic distinction exists between the merchant who handles farm produce on commission and the milk gatherer who buys milk on credit from the farmer. One acts as agent for a principal. The other is a mere debtor. The legal difference in the evil results of the dishonesty or irresponsibility of the agent and of the debtor may be readily discernible to a lawyer. He would say that a fiduciary may expect to secure his *cestui que trust*. With the farmer, the obvious result of dishonesty or irresponsibility in both cases would be the loss of the return on his farm products by a bad system of marketing. When the product in question is milk, the choice of evils between the commission merchant and the milk gatherer is reduced to the vanishing point. As the law is thus read, the requirement of a bond to secure the payment to producers is a concession rather than a burden. It applies only to those of doubtful integrity and financial responsibility. Others may obtain exemption. Doubtless a license may be required. Many trades and callings are open only to those who are licensed to pursue them. If the calling is so innocent that it must be left open to

all alike the State may not require a license.  If, on the other hand, the dishonest and unworthy should not be permitted to take advantage of the opportunities presented by a given trade or calling, they may be " told to stand aside."  (*Roman* v. *Lobe, supra,* p. 54; *Bendell* v. *De Dominicis,* 251 N. Y. 305, 310.)

When the Legislature has power to act, it may act without interference from the courts.  The Legislature has, we find, acted on reasonable grounds and in a reasonable manner.

The provision of the statute for the payment of the balance of the bond into the State treasury is not in question here.  (See *Tyson* v. *Banton,* 273 U. S. 418, 426.)

The judgments should be reversed in each case and the motions to dismiss the complaints denied, with costs in all courts.

CARDOZO, Ch. J., CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., not sitting.

Judgments reversed, etc.