JOHNSON v. COMMISSIONER OF AGRICULTURE.

1. LICENSES—REVOCATION—REVIEW BY CERTIORARI—TIME—COURTS. Provision of statute permitting person aggrieved by refusal or revocation of a license to "appeal from said decision within 10 days by writ of certiorari to the circuit court of the county" does not require that writ be issued within 10 days but that application for the writ be made therefor within the time limited, as it was not intended that the right of review be contingent upon action by the court within such time (1 Comp. Laws 1929, § 5319, as amended by Act No. 48, Pub. Acts 1931).

2. SAME—APPLICATION FOR CERTIORARI—TIME.

Licensee who made application to circuit court for certiorari on same day as order was issued revoking his licenses acted with diligence required by statute allowing him 10 days within which to appeal by certiorari from such action, and where hearing on application for writ was set for tenth day later and writ was granted third day thereafter, motion to dismiss on ground writ had not issued within 10 days was properly denied (1 Comp. Laws 1929, § 5319, as amended by Act No. 48, Pub. Acts 1931).

3. CONSTITUTIONAL LAW—PRESUMPTIONS—STATUTES.

Acts of a State legislature are to be presumed constitutional until the contrary is shown and it is only when they manifestly infringe some provision of the Constitution that they can be declared void for that reason.

4. SAME—PRESUMPTIONS—STATUTES—COURTS.

In case of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act as the power to declare laws unconstitutional should be exercised with extreme caution.

5. FOOD—MILK—POLICE POWER—PUBLIC HEALTH—PUBLIC WELFARE.

Under the police power, the State may regulate the production, sale and distribution of milk, cream, and other dairy products as the protection of the public health is involved, milk being a necessary article of food and the public welfare served by measures reasonably designed to encourage its production and sale for consumption (1 Comp. Laws 1929, § 5307 *et seq.*, as amended by Act No. 48, Pub. Acts 1931, and Act No. 236, Pub. Acts 1935).

6. SAME—MILK DEALERS—REVOCATION OF LICENSES—PAYMENT TO PRODUCERS—PUBLIC HEALTH AND WELFARE.

From the provision of milk dealers' licensing statute permitting revocation of dealer's licenses in case dealer failed to pay producer semimonthly for products received prior to beginning of last semimonthly period, it is inferable that the legislature sought to encourage the production and sale of milk and cream, a matter vital to the public health and welfare, by protecting producers from financial loss (Act No. 169, § 10a, Pub. Acts 1929, as added by Act No. 236, Pub. Acts 1935).

7. CONSTITUTIONAL LAW—REGULATION OF BUSINESS.

When a State seeks to regulate a business by statute, the regulation contained therein must not be unreasonable, arbitrary or

capricious and the means selected must have a real and substantial relation to the object sought to be attained.

8. SAME—FOOD—PRODUCERS—DEALERS—PAYMENT.

Statute inflicting severe penalties upon one who deals in a vital element of the public diet for nonpayment to producers thereof except as there is a written contract between the dealer and producer is not an unconstitutional interference with the right of freedom of contract and works no deprivation of either liberty or property (1 Comp. Laws 1929, § 5307 *et seq.*, as amended).

9. LICENSES—BUSINESS—RENEWAL—REVOCATION.

If the legislature may require a license in the first instance for the carrying on of a certain business or occupation, provision may be made for refusal to renew such license, and for the revocation thereof on reasonable grounds.

10. SAME — RENEWAL — REVOCATION — PUNISHMENT — PROTECTION OF PUBLIC—STANDARDS.

The statutory power to refuse to renew or to revoke a license for conducting a business or occupation does not rest on the theory of punishment for violation of statutory or regulatory requirements but rather it rests on the basis of prôtection to the public and is subject to the limitation that its exercise must be in accordance with reasonable standards for guidance set forth in the controlling statute and not arbitrary.

11. SAME—MILK DEALERS—REVOCATION—NONPAYMENT OF PRODUCERS —SALE OF MILK WITH INSUFFICIENT BUTTERFAT CONTENT.

The revocation of a milk dealer's license for nonpayment of milk producers and for sale of milk containing less than the prescribed percentage of butterfat was clearly within the police power of the legislature, since the statute was designed for the protection of the public and such provisions were for the same purpose (1 Comp. Laws 1929, § 5308; Act No. 169, § 10a, Pub. Acts 1929, as added by Act No. 236, Pub. Acts 1935).

12. CONSTITUTIONAL LAW—REVOCATION OF MILK DEALER'S LICENSE —EQUAL PROTECTION—DUE PROCESS.

Statutory provisions empowering commissioner of agriculture to revoke a milk dealer's license for nonpayment of milk producers and for sale of milk with less percentage of butterfat than that prescribed are not arbitrary or unreasonable and

do not constitute a deprivation of licensee's property rights without due process of law (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, §§ 1, 16; 1 Comp. Laws 1929, § 5308; Act No. 169, § 10a, Pub. Acts 1929, as added by Act No. 236, Pub. Acts 1935).

13. SAME—DUE PROCESS—NOTICE OF HEARING ON REVOCATION OF MILK DEALER'S LICENSE.

Amended notice of hearing in proceeding before commissioner of agriculture to revoke milk dealer's licenses, which charged specific violations of statute in connection with purchase of milk from four different producers and failure to pay them and with alleged violations in selling milk containing less butterfat than prescribed by statute, was not an insufficient notice such as to deprive licensee of a fair trial, and, therefore, of due process of law (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16; 1 Comp. Laws 1929, § 5308; Act No. 169, § 10a, Pub. Acts 1929, as added by Act No. 236, Pub. Acts 1935).

14. LICENSES—MILK DEALERS—REVOCATION—EVIDENCE—OTHER VIOLATIONS.

Licenses specified in notice to milk dealer's licensee were subject to revocation for violation of statutory provisions requiring payment of milk producers on a semimonthly basis where evidence adduced at hearing indicated that licensee had violated the statute in instances enumerated in notice of hearing notwithstanding record is not clear as to whether evidence of other violations of like nature was introduced for purpose of being used as a basis for revoking the licenses or to show that specifically enumerated violations were not due to mere oversight or inadvertence (1 Comp. Laws 1929, § 5308; Act No. 169, § 10a, Pub. Acts 1929, as added by Act No. 236, Pub. Acts 1935).

15. SAME—MILK DEALERS—HEARING ON REVOCATION—ADJOURNMENT —PRODUCTION OF WITNESSES—STATEMENT OF COUNSEL.

Denial of adjournment of hearing in proceeding before commissioner of agriculture to revoke milk dealer's licenses in order to permit licensee to produce a certain witness did not result in an unfair hearing where statement by counsel as to the nature and character of the testimony that such witness would give, if produced, indicated it would have no bearing on the issue before the commissioner (1 Comp. Laws 1929, § 5318).

16. SAME—MILK DEALERS—HEARING ON REVOCATION—WITNESSES.

Hearing on revocation of milk dealer's licenses *held*, not unfair, where, notwithstanding it was not adjourned at his request, denial of such adjournment was not unreasonable, cross-examination was had of witnesses produced in support of charges against him, and he offered testimony of witnesses in his own behalf and could have produced others had he so desired and commissioner of agriculture appears to have sought to arrive at the actual facts (1 Comp. Laws 1929, § 5318).

17. SAME—NOTICE OF REVOCATION—AMENDMENT AT HEARING—STATUTES.

Under statute requiring that licensee under statute regulating milk dealers be given written notice at least 10 days before date set for hearing before revoking any license, the amendment of the notice at the outset of the proceeding before the commissioner of agriculture so as to include three licenses not specifically mentioned in the notice as issued and served was not in accord with the licensee's rights under the statute, hence order revoking such three licenses was improper (1 Comp. Laws 1929, § 5318).

18. COSTS—REVOCATION OF MILK DEALER'S LICENSES—APPEAL.

No costs are allowed in proceeding to revoke certain licenses of a milk dealer where, on appeal, three of such licenses were found to have been improperly revoked but other revocations are sustained and no brief was filed in Supreme Court by the dealer (1 Comp. Laws 1929, § 5307 *et seq.*, as amended by Act No. 48, Pub. Acts 1931, and Act No. 236, Pub. Acts 1935).

Appeal from Wayne; Miller (Guy A.), J. Submitted April 3, 1946. (Docket No. 27, Calendar No. 42,559.) Decided May 13, 1946.

Certiorari by George A. Johnson against Charles Figy, successor to Leo V. Card, Commissioner of Agriculture, to review proceedings by which certain milk licenses were revoked. Order of commissioner of agriculture reversed. Defendant appeals. Reversed in part and remanded for entry of judgment.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Walter A. Rice,* Assistant Attorney General, for defendant.

CARR, J.   This case involves the constitutionality of certain provisions of Act No. 169, Pub. Acts 1929 (1 Comp. Laws 1929, § 5307 *et seq.*), as amended by Act No. 48, Pub. Acts 1931, and Act No. 236, Pub. Acts 1935 (Comp. Laws Supp. 1940, §§ 5316–1, 5317, 5319, Stat. Ann. § 12.601 *et seq.*). The validity of action by the State commissioner of agriculture under the provisions of said act is also in issue.   Said measure is entitled:

"An act to regulate the production, handling, sale and disposition of milk, cream and other dairy products; to define different kinds of dairy products and prescribe standards for the same; to provide for the payment for milk and cream semimonthly; to provide for licenses in certain instances and for the revocation thereof and to fix penalties for the violation of this act and to repeal certain acts."

In accordance with the general purpose as indicated in the title the act makes provision for certain standards to be observed in the production and sale of dairy products and for the granting of licenses by the State commissioner of agriculture to applicants desiring to engage in the business of selling milk or cream.   Provision is also made for the revocation of such licenses for cause, for the giving of written notice of such proposed revocation, appointing a time and place of hearing, and for appeal by way of certiorari in certain cases. Section 10a, added by the amendment of 1935,* reads as follows:

---

* Comp. Laws Supp. 1940, § 5316–1, Stat. Ann. § 12.611.—REPORTER.

"Every person, firm or corporation purchasing cream or milk for the purposes of reselling or of manufacturing the same into other products, shall pay the producer, unless otherwise provided by a written contract, semimonthly; payment shall be made on or before the first day of each and every month for all cream or milk received prior to the 15th day of the preceding month, and payment shall be made on or before the 15th day of each and every month for all cream or milk received prior to the first day of the same month. Whoever violates the provisions of this section shall be subjected to revocation of his license as provided in this act."

Prior to institution of the proceeding out of which this case arises, plaintiff held a number of licenses, referred to as dairy plant licenses and milk wagon licenses, issued to him under the statute by the commissioner of agriculture. Under date of November 19, 1942, the commissioner, the predecessor in office of the appellant, issued a notice, directed to plaintiff, that a hearing would be had on December 4, 1942, at a designated place in the city of Detroit, to determine whether certain licenses specified therein should be revoked because of plaintiff's alleged failure to comply with section 10a, above quoted, and also because of the sale of milk containing less than three per cent. butterfat, in violation of section 2 of the act. Objection was made by defendant's counsel to the sufficiency of this notice and, pursuant to stipulation, an amended notice was issued by the commissioner under date of December 7, 1942. Said amended notice specified particular instances of the violation of section 10a by plaintiff and also the date and place of sale of the milk referred to in the earlier notice. On December 18, 1942, a hearing was conducted by the

commissioner under the amended notice, at which plaintiff was represented by counsel. Testimony in support of the claims set forth in the notice of hearing was taken and plaintiff's counsel also offered proofs.

Following the hearing, and under date of December 29, 1942, the commissioner of agriculture made an order revoking certain specified dairy plant and milk wagon licenses held by plaintiff. Three of the licenses ordered revoked, Nos. 81, 275, and 1018, were not specified in the notice of hearing as originally served but were added by amendment at the opening of the hearing before the commissioner. Following the issuance of the order of revocation plaintiff made application to the circuit court of Wayne county for a writ of certiorari, filing his petition on December 29, 1942, and thereupon an order was made for hearing on said petition on January 8, 1943. The writ was issued on January 11th, following. A subsequent hearing before the court resulted in a judgment vacating the order of the commissioner of agriculture. The trial court held that section 10a, above quoted, is unconstitutional for the following reasons:

"(1) Because it is an exercise of the police power, is unreasonable, and, therefore, amounts to a deprivation of property without due process of law.

"(2) That in many of its aspects its operation necessarily depends upon statutes which in and of themselves are an unlawful delegation of legislative authority."

The trial court was further of the opinion that the proceedings actually held before the commissioner of agriculture did not comply with the constitutional guaranties of due process of law. From

the judgment entered in the circuit court defendant has appealed. The attorney general, appearing for defendant, has filed a brief asserting validity of the provisions of the statute involved in the case, and also claiming that the proceeding before the commissioner of agriculture conformed to the basic requirements for due process of law. No brief has been filed on behalf of plaintiff.

At the hearing on plaintiff's application to the circuit court for writ of certiorari, held January 8, 1943, defendant moved to dismiss the proceeding because plaintiff had failed to procure the issuance of a writ within a period of ten days following the order of the commissioner of agriculture. The motion was denied and defendant now claims that such denial was erroneous. The provision of the statute governing the appeal is found in section 13 * of the act, reading as follows:

"Any person, firm, association, or corporation who feels aggrieved at the decision of the commissioner in refusing or revoking a license, may appeal from said decision within 10 days by writ of certiorari to the circuit court of the county in which such person resides, or in case of a firm, association or corporation, the county in which is located its principal place of business."

It is claimed in substance that the statute must be construed as requiring the issuance of the writ of certiorari within the 10-day period following the decision of the commissioner of agriculture. With this interpretation of the statute we are not in accord. We think it was the intention of the legislature to require that the application for the writ should be submitted to the circuit court within

---

* 1 Comp. Laws 1929, § 5319, as amended by Act No. 48, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 5319, Stat. Ann. § 12.614).—Reporter.

the time limited, but that it was not intended to make the right of review contingent on action by said court before the expiration of the 10-day period. In the instant case plaintiff filed his application on the same day that the order of the commissioner was issued. It was set for hearing on the tenth day thereafter and the writ finally issued three days later. Plaintiff acted with the measure of diligence required by the statute and the motion to dismiss was properly denied.

The principal question in the case arises from the holding of the trial court that section 10a, above quoted, is unconstitutional. In determining this question every reasonable doubt and intendment must be resolved in favor of the legislative action. In the early case of *Sears* v. *Cottrell*, 5 Mich. 251, it was said (p. 259):

"No rule of construction is better settled in this country, both upon principle and authority, than that the acts of a State legislature are to be presumed constitutional until the contrary is shown; and it is only when they *manifestly* infringe some provision of the Constitution that they can be declared void for that reason. In cases of doubt, every possible presumption, not clearly inconsistent with the language and the subject matter, is to be made in favor of the constitutionality of the act.

"The power of declaring laws unconstitutional should be exercised with extreme caution, and never where serious doubt exists as to the conflict."

This rule has been repeatedly quoted and applied in subsequent decisions in this State. *Bowerman* v. *Sheehan*, 242 Mich. 95 (61 A. L. R. 859); *Cady* v. *City of Detroit*, 289 Mich. 499; *In re Phillips*, 305 Mich. 636.

Under the police power, the State may regulate the production, sale and distribution of milk, cream,

and other dairy products. The protection of the public health is involved. Milk is a necessary article of food and the public welfare is served by measures reasonably designed to encourage production and sale for consumption. In the enactment of Act No. 236 of 1935, incorporating section 10a in the prior statute, it is fair to assume that the legislature had in mind encouraging the production and sale of milk and cream by protecting those engaged in the business from financial loss due to inability to collect for products sold. Parties desiring to avoid the mandatory provisions of the statute may do so by taking advantage of the provision of section 10a with reference to written contracts. Under such provision the parties may, by written agreement, make such arrangement as to payment as may be mutually satisfactory.

The validity of statutory provisions requiring purchasers of milk and other dairy products intended for resale to consumers to give bond or other security to insure payment to purchasers has arisen in other States and such provisions have been sustained against objections on constitutional grounds. Obviously, the purpose of such requirement with reference to security for payment is identical with the purpose of section 10a, above quoted. The object sought to be obtained is the fostering of the business of producing milk, cream and other dairy products and their marketing for distribution and resale. Among cases of this character is *People* v. *Perretta*, 253 N. Y. 305 (171 N. E. 72, 84 A. L. R. 636). It was there said, in upholding the validity of a legislative enactment requiring the filing of a bond to secure payment for milk purchased by dealers from producers:

"The legislature has a wide discretion in protecting the public from the dishonest or irrespon-

sible. (*Roman* v. *Lobe,* 243 N. Y. 51 [152 N. E.
461, 50 A. L. R. 1329]; *People* v. *Teuscher,,* 248
N. Y. 454 [162 N. E. 484].) The question is how to
apply the test. Is it a public evil to permit irrespon-
sible persons and corporations to operate milk-
gathering stations although they may engage in
many other legal callings at will? If so, milk
gatherers may be put into a particular class (*New
York, ex rel. Bryant,* v. *Zimmerman,* 278 U. S. 63
[49 Sup. Ct. 61, 73 L. Ed. 184, 62 A. L. R. 785]).
In the *Beakes Case* (*People* v. *Beakes Dairy Co.*),
Kellogg, P. J., in a dissenting opinion in the Appel-
late Division (179 App. Div. 942 [166 N. Y. Supp.
209]), states the conditions which called forth the
law as follows: 'It is vital to the public welfare
that the cities of the State be supplied with pure
and wholesome milk. It is of the utmost impor-
tance to the public welfare that the farmers should
be induced to produce milk for use in the cities and
that the persons purchasing and shipping milk for
city use shall be responsible persons so that the
seller shall receive pay for his milk. It is a fact
too well known to need discussion that the farming
community has suffered great damage by irrespon-
sible persons buying on credit their milk for ship-
ment to the large cities without paying therefor.
Such transactions naturally tend to convince the
farmer that it is better for him to limit his produc-
tion of milk or take it to the home factory to be
manufactured there, dealing with people whom he
knows rather than to sell it for city use. It is
apparently recognized as impracticable that the
payments should be made to the farmer upon the
delivery of each sale of milk. When a person seeks
to buy milk from the farmers of the State to ship
to the cities of the State for use and consumption,
his transactions affect the public interest, and the
welfare of the farming community means the wel-
fare of the public, and the State may properly pro-
tect the farmer from irresponsible dealers who seek

his milk for shipment to the cities. This law, as we have indicated, has more than one aspect. It naturally benefits the farmers, but it guarantees the city a supply of milk. The farmer is not naturally a financier, and when he produces the milk he should be reasonably assured that he is to have its value, and the State may prevent irresponsible people from taking away his milk without giving some reasonable surety that it will be paid for. In the absence of some such provision, the shipment of milk to the cities would fall off and be greatly limited.'

"The producer of milk for the city market desires to find a ready purchaser near at hand to take his product from the source of supply to the point of consumption. He cannot peddle his product from door to door or hold it to await a rise in market prices or a cash purchaser. He must sell it to milk gatherers; deliver it fresh and often on credit. Such are the conditions of the market peculiar to the handling of milk. The law deals with a definite class, i. e., the milk gatherers. It is not wholly for the benefit of the farmer. If it gives him 'a club to aid in the collection of debts which is not given to other creditors' (*State* v. *Latham*, 115 Me. 176 [98 Atl. 578, L. R. A. 1917 A, 480]), it gives it to him to keep open the stream of milk flowing from farm to city as well as to guard him from financial loss."

The supreme court of Pennsylvania reached a like conclusion in *Harrisburg Dairies, Inc.*, v. *Eisaman* (1940), 338 Pa. 58 (11 Atl. [2d] 875). Of like import is *Ziegler* v. *Brown*, 28 Ohio Op. 263, where a similar provision of an Ohio statute was sustained. Citing *Nebbia* v. *New York*, 291 U. S. 502 (54 Sup. Ct. 505, 78 L. Ed. 941, 89 A. L. R. 1469), and *People* v. *Perretta, supra*, the court said:

"It is not for this court to determine the wisdom of the legislature in the enactment of this law but to determine only whether the legislature in its

enactment has transcended its powers in violation of the Ohio Constitution and the Constitution of the United States. It is fundamental that the legislature is primarily the judge of the necessity of such an enactment and that every possible presumption is in favor of its validity as set forth in the decision of *Nebbia* v. *New York, supra.* It is only if and when the act in question is clearly violative of constitutional authority that a court may set aside the legislative enactment.

"As this court views it, the public good, health and welfare is best served by a strict regulation of the production, marketing, sale and distribution of milk which is a most essential item of our daily diet. The State is acting wholly within its authority when it imposes requirements such as are contained in this act so long as the regulations are not unreasonable, arbitrary or capricious, and that the means selected have a real and substantial relation to the object sought to be attained. The State of Ohio has here sought to adopt an economic policy reasonably deemed to promote the public welfare in the production, distribution, marketing and sale of milk by legislation adapted to its purpose. This court is therefore, on the highest judicial sanction 'without authority either to declare such policy, or when it is declared by the legislature, to override it.' "

The supreme court of California in *People* v. *Perry,* 212 Cal. 186 (298 Pac. 19, 76 A. L. R. 1331), upheld the constitutionality of a statute imposing penalties on purchasers of fruit representing themselves to be cash purchasers but failing to make payment. In answering the objection that the act was an unreasonable interference with freedom of contract and also that it was in violation of the due process of law clauses of the State and Federal Constitutions, it was said (p. 194):

"The act in question has for its obvious purpose the protection of the growers and producers of de-

ciduous fruits in the State of California against the fraudulent conduct and acts of unconscionable persons who, representing themselves to be cash buyers, purchase and receive the delivery and ownership of their said products, and having done so, wilfully fail or refuse to pay for the same upon demand and in accordance with the terms and conditions of their purchase thereof. The statute in so providing in nowise interferes with the freedom of contracts and works no deprivation of either liberty or property when it undertakes to visit severe penalties upon those who, thus representing themselves to be cash buyers of the grower's or producer's products, undertake to defraud such grower or producer out of the price and profit of his product with which he has thus been induced to part ownership and to rely upon the purchaser's promise to pay upon demand.''

See, also, *People* v. *Beakes Dairy Co.*, 222 N. Y. 416 (119 N. E. 115, 3 A. L. R. 1260); *Rawson* v. *Department of Licenses*, 15 Wash. (2d) 364 (130 Pac. [2d] 876); *Sullins* v. *Butler*, 175 Tenn. 468 (135 S. W. [2d] 930). In the two cases last cited statutes providing for revocation of an automobile driver's license for failure to pay a judgment based on negligent operation of an automobile were upheld on the theory that it was within the power of the legislature to impose such requirement as an incident of operation under a license. In reaching the conclusion indicated, the Tennessee court referred to other decisions emphasizing that the purpose of such legislation was to protect the public against improper conduct in the operation of automobiles. To accomplish such purpose, it was recognized that the legislature of the State had acted within the limits of its powers in making provision for the revocation of a license under the circumstances indicated. See, also, *Surtman* v. *Secretary of State*, 309 Mich. 270.

In *Cofman* v. *Ousterhous,* 40 N. D. 390 (168 N. W. 826, 18 A. L. R. 219), the plaintiff's license to conduct a cream station was revoked by the State dairy commissioner because of failure to observe certain requirements of the State statute governing operation of the business. As in the case at bar, plaintiff brought a writ of certiorari to review the action taken, attacking the constitutionality of the statute. The act was upheld, although it made no specific provision for judicial review, the court holding that the remedies by mandamus and certiorari were available to redress any wrong suffered through arbitrary or unreasonable action on the part of officers charged with enforcement of the law. It was also suggested that plaintiff, having obtained a license under the law, was in no position to attack the validity of the statute providing for the issuance and revocation of such license.

In *Jersey Maid Milk Products Co., Inc.,* v. *Brock,* 13 Cal. (2d) 620 (91 Pac. [2d] 577), and in *Ray* v. *Parker,* 15 Cal. (2d) 275 (101 Pac. [2d] 665), a California statute providing for the revocation of the license of a distributor of milk or cream, for violation of the statute, or of any provision of the stabilization and marketing plan formulated thereunder, was upheld.

It is uniformly recognized that, if the legislature may require a license in the first instance for the carrying on of a certain business or occupation, provision may be made for refusal to renew such license, and for the revocation thereof on reasonable grounds. Such decisions do not rest on the theory of punishment for violation of statutory or regulatory requirements but, rather, on the basis of protection to the public. The power of revocation is subject to the limitation that it may not be arbitrarily exercised. This court, in *People* v. *Riksen,*

284 Mich. 284 (116 A. L. R. 116), in sustaining a municipal ordinance, said:

"Under this ordinance the mayor may suspend a license for violation of a city ordinance, violation of the terms of the license or for undesirable business practices. A fair construction of this section of the ordinance indicates that the mayor may not arbitrarily suspend a license. The ordinance directs a standard for his guidance and conditions under which suspension may be accomplished. The only discretion the mayor has under the terms of this ordinance is to determine whether there has been a violation of the ordinance for any of the reasons mentioned."

Under the statute here involved, it may be said that the question for determination by the State commissioner of agriculture, in a proceeding instituted for the purpose of revoking a license granted under the statute, is whether the licensee has violated a provision of said statute, or any lawful regulation adopted thereunder. In the case at bar the specific inquiry was whether plaintiff had, in fact, violated section 10a and, also, whether he had violated section 2 of the act, by sale of milk containing less than the prescribed percentage of butterfat. We are, therefore, concerned solely in this case with the revocation of a license because of the licensee's failure to comply with provisions of the statute. Under the authorities above cited, it cannot be said that the legislature exceeded its powers, or violated any provision of the State or Federal Constitution, in the enactment of the statutory provisions assailed in this case and in providing therein for the revocation of licenses for violation of such provisions. The requirements imposed by the act with reference to obtaining licenses to carry on business thereunder are clearly within the police power

of the State. Such provisions are designed for the protection of the public and the provisions with reference to revocation of licenses are designed to accomplish the same purpose. That a license may be revoked for failure to obey the provisions of the statute or ordinance under which such license is granted is too firmly established to be open to question. It is our conclusion that the provisions of Act No. 169, Pub. Acts 1929, as amended, the validity of which was assailed by plaintiff in the trial court, are not unconstitutional because arbitrary and unreasonable or because they operate to deprive plaintiff of property rights without due process of law.*

On the hearing in the circuit court plaintiff contended that the proceedings before the commissioner of agriculture were of such a character as to deprive plaintiff of a fair trial and, therefore, of due process of law. The court agreed with this claim, holding, in substance, that the notice of the hearing was not sufficient and that the hearing itself was not fairly conducted. The amended notice charged specific violations in connection with the purchase of milk from four different producers, and failure to pay therefor as required by section 10a. As to these alleged violations of the statute the notice was specific and not open to objection. The same is true as to the alleged violation of section 2 of the act in the sale of milk containing less than three per cent. of butterfat. On the hearing before the commissioner of agriculture testimony as to the failure of plaintiff to make payment for milk within the time prescribed by the statute, as set forth in the notice, was offered and received. Evidence of other violations of the statute, of like nature, was

---

* See U. S. Const. Am. 14; Mich. Const. 1908, art. 2, §§ 1, 16.—
REPORTER.

also introduced. Whether this was done for the purpose of showing that the violations of the statute specifically enumerated in the notice of the hearing were not due to mere oversight or inadvertence, or on the theory that such other violations might be shown as the basis for revoking the licenses, is not clear from the record. However, the evidence before the commissioner clearly indicated that plaintiff had violated, in the specific instances enumerated, the provisions of section 10a. In consequence, under the specific language of the statute, the licenses specified in the notice of hearing as served on plaintiff were subject to revocation.

Examination of the transcript of the proceeding before the commissioner does not indicate that the hearing was conducted in an unfair manner. A request by counsel for plaintiff that the matter be adjourned in order to permit him to produce a certain witness was denied, but the statement by counsel as to the nature and character of the testimony that such witness would give, if produced, indicates that it would have had no bearing on the issue before the commissioner, namely, whether plaintiff had violated the provisions of the statute as alleged in the notice of hearing. Under the circumstances, it cannot be said that the denial of the motion was unreasonable. Plaintiff's counsel cross-examined witnesses produced in support of the charges made and he also offered the testimony of witnesses for plaintiff. No reason is shown on the record for failure to produce other and additional proofs if plaintiff desired to offer such. The record indicates that the commissioner undertook to conduct the hearing fairly, with the purpose in mind of arriving at the actual facts.

In one particular, however, the action of the commissioner was, and is, open to objection. As before

stated, the notice of hearing was amended at the outset of the proceeding before the commissioner in such manner as to include three licenses not specifically mentioned in the notice as issued and served. Section 12 of the act (1 Comp. Laws 1929, § 5318 [Stat. Ann. § 12.613]), reads as follows:

"Before revoking any license the commissioner of agriculture shall give written notice to the licensee affected stating that he contemplates the revocation of the same, giving his reasons therefor. Said notice shall appoint a time and place of hearing, which place of hearing shall in all cases be in the county where the licensee shall conduct his place of business. Said notice shall be mailed by registered mail to the licensee at least 10 days before the date set for the hearing or personal service rendered. The licensee may present such evidence of a relevant nature to the commissioner of agriculture as he deems fit and, after hearing all the testimony, the commissioner of agriculture shall decide the question in such manner as to him appears just and right."

Under the specific terms of the statute a licensee is entitled to be advised in the manner prescribed as to what license or licenses are being contemplated for revocation. Plaintiff was entitled to a 10-day notice, thus affording him an opportunity to prepare to offer his proof with reference to his acts under the licenses, the revocation of which is involved. In consequence, the amendment of the notice at the outset of the hearing before the commissioner was not in accord with the rights of plaintiff under section 12, above quoted. It follows that the three licenses referred to were improperly revoked by the commissioner.

The case is remanded to the circuit court for entry of judgment vacating the order of the com-

missioner insofar as said order undertook to revoke dairy plant licenses Nos. 81, 275 and 1018, and affirming said order as to the other licenses referred to therein. No costs are allowed.

Butzel, C. J., and Bushnell, Sharpe, Boyles, Reid, North, and Starr, JJ., concurred.