Isadore Bookstein, J.
This is an action for an injunction by plaintiff, Commissioner of Agriculture and Markets (hereinafter called “ Commissioner ”), pursuant to section 258-e of the Agriculture and Markets Law, to compel defendant to deposit funds in an escrow account to be maintained to secure payment for milk purchased by defendant, as provided for in subdivision 7 of section 258-b of the Agriculture and Markets Law which went into effect April 1, 1963.
There is substantially no factual dispute. The determination of the issue between the parties is virtually a question of law.
Basically, defendant relies on four affirmative defenses pleaded in its answer, viz.: (1) that subdivision 7 of section 258-b is unconstitutional as violative of section 1 of the Fourteenth Amendment of the Federal Constitution and section 1 of article I of the New York State Constitution; (2) that the determination of plaintiff was unconstitutional under section 1 of the Fourteenth Amendment of the Federal Constitution and section 11 of article I of-the New York State Constitution, as a denial of due process; (3) that plaintiff has erroneously construed the intention of the Legislature as found in the words of subdivision 7 of section 258-b; (4) that plaintiff’s determination is arbitrary and capricious and unjustified upon the facts.
*554 While the question is not raised by the pleadings, the defendant also contends that plaintiff has failed to prove that he is without an adequate remedy at law.
A substantial portion of plaintiff’s brief is devoted to the proposition that subdivision 7 of section 258-b is constitutional, so far as the commerce clause of the United States Constitution is concerned. However, there is no need to consider that question, since defendant raised no contention in its answer to the effect that said section violates the commerce clause. Its contention is that it is unconstitutional under the due process and equal protection clauses of the United States and New York SÍfctfo (¡av»QTTrntiruno
In Hood & Sons v. Du Mond (336 U. S. 525, 529-530 [1949]), the United States Supreme Court said: ‘ ‘ Production and distribution of milk are so intimately related to public health and welfare that the need for regulation to protect those interests has long been recognized and is, from a constitutional standpoint, hardly controversial. Also, the economy of the industry is so eccentric that economic controls have been found at once necessary and difficult. These have evolved detailed, intricate and comprehensive regulations, including price-fixing. They have been much litigated but were generally sustained by this Court as within the powers of the State over its internal commerce as against the claim that they violated the Fourteenth Amendment.”
In People v. Beakes Dairy Co. (222 N. Y. 416 [1918]) the Court of Appeals upheld, as constitutional, as to corporations, the then section 55 of the Agricultural Law, which required a license to carry on the business of purchasing milk or cream and the furnishing of a bond, as security for payment to persons who have sold milk and cream, during the period of the license. It expressly held that equal protection of the laws was not denied by that section. Parenthetically, in that case the court expressly refused to follow the decision in State of Maine v. Latham (115 Me. 176) cited by defendant.
Thereafter, in People v. Perretta (253 N. Y. 305 [1930]) the Court of Appeals determined that the then section 252 of the Agriculture and Markets Law, which was the successor to former section 55 of the Agricultural Law and which also required a license and security in order to carry on the business of a milk-gathering station, was valid, as to an individual and was not a denial of due process of law, contrary to the guarantee of the Fourteenth Amendment to the United States Constitution.
In that case, the decision in State of Maine v. Latham (115 Me. 176, supra) was also disaffirmed.
*555 Former section 55 of the former Agricultural Law and former section 252 of the Agriculture and Markets Law are the sources of present section 258-b of the present Agriculture and Markets Law. Its constitutionality so far as due process and equal protection of the laws rests on the firm foundation of the decisions in the cases of People v. Beakes Dairy Co. (222 N. Y. 416, supra) and People v. Perretta (253 N. Y. 305, supra).
The new subdivision 7 of section 258-b is similar in import to the earlier paragraphs of that section of the Agriculture and Markets Law. It has the same freedom from successful attack, as to due process and equal protection of the laws, as do such earlier subdivisions thereof, under the two decisions of the Court of Appeals heretofore referred to.
Subdivision 7 of section 258-b of the Agriculture and Markets Law is merely an extension of the security provision of section 258-b to insure adequate security.
The legislative intent that that subdivision is in addition to the other forms of security is clear. It did not substitute the form of security therein established for the earlier security provisions of that section. Were such the intention, it could have been easily and clearly expressed.
It empowers the ‘ ‘ Commissioner ’ ’, whenever he determines that the financial condition of a milk dealer is such that the protection to producers selling milk is not adequately guaranteed by the bond filed pursuant to that section or by the cash or bonds of the United States or State of New York, deposited in lieu thereof, to require such milk dealer to pay each week into an escrow fund established by the “ Commissioner ” and maintained under his supervision and control an amount equal to the value of milk received by such milk dealer during the preceding seven days as reckoned from a date fixed by the “ Commissioner ”.
It is difficult to see how the requirement of subdivision 7 of section 258-b can be anything other than additional security, where existing bonds standing alone do not furnish adequate security.
Section 258-b allows discretion to the “ Commissioner ” with respect to the requirements as to security. Subdivision 7 thereof merely provides an additional method of providing totality of security which is the objective of all of the subdivisions of section 258-b dealt with in that section. That in the case of some dealers one method furnishes adequate security while in the case of others, more than one of the methods must be resorted to, does not deny equal protection, as contended by defendant.
*556 In point of fact, the ‘ ‘ Commissioner ’ ’ was not bound to require or permit an escrow fund as security. Under the other provisions of section 258-b, he could have exacted a more drastic measure of security by means of a much greater surety bond or by way of a substantial increase in the United States Government or State bonds to be posted as security.
The standard by which security is required is applicable to all milk dealers alike, i.e., the financial condition of the dealer and the extent of his indebtedness for milk purchases. The alternative forms of security which the “Commissioner” is authorized to require is, in the last analysis for the benefit of the milk dealers by permitting him to accept flexible forms of security.
Defendant contends that the “ Commissioner ” may require security for purchases from New York State producers only and that he cannot require security for purchases from co-operatives, whether they be New York State or out-of-State co-operatives or out-of-State producers.
Subdivision 4 of section 258-b provides that “ The provisions of this article ” i.e., article 21, “ relative to a milk dealer buying milk from producers # * * shall apply also to a milk dealer buying milk from a co-operative association * * * whenever protection by bond or otherwise is directed by the Commissioner to protect the interests of producers.” (Italics added.)
Subdivision 7 of section 258-b is a part of article 21 of the Agriculture and Markets Law and hence the aforesaid provision as to co-operatives is applicable thereto.
Moreover, while the first sentence of subdivision 7 of section 258-b mentions only producers, the second last sentence thereof refers to a co-operative association also.
There can be no doubt but that by reason of subdivision 4 of section 258-b as well as by subdivision 7 of section 258-b, the provisions of the latter are applicable to purchases from co-operative associations as well as from producers. Section 258-k of the Agriculture and Markets Law, among other things, states: “that it is the policy of this state to promote, foster and encourage the intelligent and orderly marketing of milk through producer owned and controlled cooperative associations ’ \
Defendant contends that the decisions in People v. Shoemaker (228 App. Div. 314 [1930], affd. 254 N. Y. 567 [1930]) and Wilson v. Israel (227 N. Y. 423 [1920]) to the effect that co-operatives are not producers within the meaning of the Agriculture *557 and Markets Law, precludes security being required for purchases of milk from co-operatives.
The former case was decided on the basis of the then section 252 of the Agriculture and Markets Law. The latter case was decided on the basis of the then section 55 of the Agricultural Law.
Former section 55 was the source of former section 252. The sources of present subdivision 4 of section 258-b of the Agriculture and Markets Law, therefore, are former section 55 of the Agricultural Law and section 252 of the Agriculture and Markets Law. After the decisions in the two eases lastly referred to, subdivision 4 of section 258-b was amended to include co-operatives, by chapter 126 of the Laws of 1934, so that those decisions are no longer the law.
The contention that subdivision 7 of section 258-b is not applicable to co-operatives is untenable.
We come then to the question of whether or not section 258-b is applicable to out-of-State producers and co-operatives. Plaintiff contends that it is; defendant contends to the contrary.
In support of its contention, plaintiff relies on the decision in Pyrke v. Standard Acc. Ins. Co. (144 Misc. 53, affd. sub nom. Baldwin v. Standard Acc. Ins. Co., 237 App. Div. 334, affd. 262 N. Y. 575). That case arose under article 20 of the Agriculture and Markets Law, relating to bonding of commission merchants. It is asserted by plaintiff that the statute made no distinction between New York State and out-of-State consignors of a bonded merchant. The court, nevertheless, held that the article applied to out-of-State as well as to State creditors.
While the litigation in that case was pending, the Legislature amended article 20, so as to make it applicable to New York State creditors only.
In further support of plaintiff’s contention, attention is called to the fact that under article 20 of the Agriculture and Markets Law, dealing with commission merchants and article 20-B thereof, dealing with processing plants, the protection of such articles, by way of security, is expressly limited to New York State transactions and that, on the other hand, no such limitation is found in the Milk Control Law, article 21 of the Agriculture and Markets Law. By analogy, therefore, plaintiff claims that section 258-b of the Agriculture and Markets Law applies to New York State and also to out-of-State producers and co-operatives.
In Pyrke, the action was against the surety company upon the bond furnished by the commission merchant pursuant to *558 the statute. The statute there contained a provision that “in case of the bankruptcy of * * # such commission merchant * * * the commissioner shall proceed to ascertain the names and addresses of all consignor creditors of such commission merchant, together with the amounts due and owing to them by such commission merchant * * # notifying * * * all such consignor creditors to file a verified statement of their claims ”. (Italics added.)
The “ Commissioner ” was then authorized to bring an action on the bond and the recovery was held to be for the benefit of New York State as well as out-of-State consignor creditors.
Pyrke held that the statute was constitutional in affording protection to out-of-State consignors.
However, in holding that the statutes did apply to out-of-State consignor creditors, the court placed great emphasis on the word all. (See Pyrke v. Standard Acc. Ins. Co., 144 Misc. 53, 57.)
However, section 258-b of the Agriculture and Markets Law in none of its subdivisions makes it applicable to all producers and co-operatives. The only use of the word all in that section is in subdivision 1 where the word is used as to all amounts due but not as to all producers or co-operatives.
Articles 20 and 20-B of the Agriculture and Markets Law show a general legislative intent that protection is intended for New York State creditors. And, while article 21 does not expressly make a distinction between New York State and out-of-State producers and co-operatives, the fact is that it significantly omits the word all as to producers and co-operatives.
Moreover, the declaration of policy contained in section 258-k of the Agriculture and Markets Law seems clearly to be for the protection of New York State producers and co-operatives.
Accordingly, I conclude that section 258-b is not applicable to out-of-State producers or co-operatives.
So far as defendant’s contention that there was an invasion of its right to due process by the determination of the “ Commissioner ’ ’, without notice or hearing, it is unnecessary to repeat what was said on that subject in Wickham v. Champlain Creameries (40 Misc 2d 831).
As was indicated there, the determination was not self-executing. The ‘ ‘ Commissioner ’ ’ had two choices, viz., one under section 258-c to institute a proceeding to revoke the license of defendant, and the other to proceed in an action for an injunction under section 258-e. In the former, defendant *559 would be entitled to a hearing and notice thereof and a right to review the determination in an article 78 proceeding. The latter course was chosen and this action instituted. Therein, defendant had to be served with a summons and complaint; afforded an opportunity to answer and to have a plenary trial, all of which has been done. Thus there is complete due process.
Defendant also contends that security cannot be required to cover purchases from dealers. Plaintiff does not contend otherwise. Indeed, it offered to amend the prayer for relief, if necessary, to limit the amount of security to purchases from producers and co-operatives, both of the State of New York and out-of-State.
The proof fails to sustain any of the affirmative defenses, except as to the third affirmative defense, which is denominated “ Fourth” in the answer.
This court concludes that subdivision 7 of section 258-b is constitutional.
Moreover, as already indicated, section 258-b in its entirety applies only to New York State producers and co-operatives.
The amount of the escrow account is not to be fixed by the court. That is a matter of simple mathematics, based upon the reports filed with the “ Commissioner ” by defendant.
Defendant also contends that the Government bonds on deposit, whose market value is, in round figures, $112,000, should be deducted from the amount fixed for the escrow account, if such amount exceeds $112,000.
The whole tenor and purpose of section 258-b, including subdivision 7 thereof, is to furnish a totality of security. The escrow account is an amount to protect the purchases made in the preceding seven-day period. Obviously, that amount cannot be determined until the expiration of such seven-day period. Thus, there is always a hiatus in security for a week’s purchases. That hiatus is therefore covered by the Government bonds on deposit, which in fact may not be fully adequate for the purchases during such period, depending upon the total amount thereof.
Finally, lack of an adequate remedy at law need not be alleged or proven in an action for an injunction under section 258-e of the Agriculture and Markets Law, by the express provisions of that section.
Accordingly, plaintiff is not required to allege or prove irreparable damage in order to sustain this action for an injunction.
Plaintiff is entitled to injunctive relief in accordance with this opinion.